United States District Court
District of New Jersey

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Joseph A. Dickson |
| v. | : | Mag. No. 16-6602 (JAD) |
| DANDONG HONGXIANG | : | **CRIMINAL COMPLAINT** |
| INDUSTRIAL DEVELOPMENT | | **(UNDER SEAL)** |
| CO. LTD., | : | |
| MA XIAOHONG, | | |
| ZHOU JIANSHU, | : | |
| LUO CHUANXU, and | | |
| HONG JINHUA | : | |

     I, Bryan R. Greene, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

SEE ATTACHMENT A

     I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

Bryan R. Greene, Special Agent<br>
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,

August 3, 2016      at    Newark, New Jersey
Date                      City and State

Honorable Joseph A. Dickson
United States Magistrate Judge
Name & Title of Judicial Officer        Signature of Judicial Officer

**ATTACHMENT A**

**Count One**
**(Conspiracy to Violate the International Emergency Economic Powers Act
And to Defraud the United States)**

From on or about December 9, 2009, through in or about September 2015, in Essex County, in the District of New Jersey and elsewhere, the defendants,

DANDONG HONGXIANG INDUSTRIAL DEVELOPMENT CO. LTD.,
MA XIAOHONG,
ZHOU JIANSHU,
LUO CHUANXU, and
HONG JINHUA,

and others did knowingly and intentionally conspire and agree: (a) to violate, evade, and avoid the restrictions imposed by the Office of Foreign Assets Control, U.S. Department of the Treasury, under the Weapons of Mass Destruction Proliferators Sanctions Regulations, Title 31, Code of Federal Regulations, Section 544.101, *et seq.*, by providing services on behalf of and for the benefit of a Specially Designated National, to wit, Korea Kwangson Banking Corp. ("KKBC"), without first having obtained a license from the Office of Foreign Assets Control, and (b) to defraud the United States government by interfering with and obstructing a lawful government function, that is, the enforcement of the Weapons of Mass Destruction Proliferators Sanctions Regulations, by deceit, craft, trickery, and dishonest means, contrary to Title 50, United States Code, Section 1705(c), and Title 31, Code of Federal Regulations, Sections 544.201 and 544.205.

In furtherance of the conspiracy, and to effect the illegal objects thereof, defendants DANDONG HONGXIANG INDUSTRIAL DEVELOPMENT CO. LTD., MA XIAOHONG, ZHOU JIANSHU, LUO CHUANXU, HONG JINHUA, and their co-conspirators knowingly caused the following overt acts to be committed in the District of New Jersey and elsewhere:

a. In or about December 2009, the KKBC branch office in Dandong, China contracted with defendant Dandong Hongxiang Development Co. Ltd. ("DHID"), a China-based trading company, to be a third-party payer on a $6.85 million contract to purchase refined sugar using U.S. dollars for North Korea Company A. On the contract, DHID is identified as "the agent of the North Korean party."

b. In or about September 2009, defendants ZHOU JIANSHU ("ZHOU") and LUO CHUANXU ("LUO") coordinated U.S. dollar payments to a Singapore-based urea distributor ("Singapore Distributor") for the benefit of KKBC.

c. On or about December 6, 2011, defendant ZHOU communicated by email with a China-based urea fertilizer distributor ("Chinese Distributor") about a contract for the purchase of urea fertilizer by DHID. DHID was coordinating this purchase on behalf of North Korea Company B, and the contract was guaranteed by KKBC.

d. On or about March 6, 2013, ZHOU sent an email to a representative of North Korea Company B that included a quote by DHID to sell North Korea Company B 20,000 metric tons of urea fertilizer. Under the terms of the offer, DHID agreed to sell North Korea Company B, 20,000 tons of urea fertilizer packaged in 50 kg. bags to be shipped from a port in China at the price of $480

2

per metric ton.  The email further specified that the offer would be valid until March 10, 2013.  The offer also stated that DHID must receive the guarantee from KKBC that the funds were deposited by North Korea Company B before loading the cargo.

e.  On or about January 3, 2014, DHID sent North Korea Company B an offer to sell 10,000 metric tons of urea, but conditioned on a 30% deposit from North Korea Company B and "a letter of credit from [KKBC] for the remaining 70% guaranteeing payment within 3 months from the [bill of lading] date."

f.  On or about September 1, 2015, KKBC transferred $500,000 to a U.S. dollar account DHID maintained at a Pyongyang, North Korea branch of KKBC.

In violation of Title 18, United States Code, Section 371.

## Count Two
### (Conspiracy to Launder Monetary Instruments)

From on or about December 9, 2009, through in or about September

2015, in Essex County, in the District of New Jersey and elsewhere, the

defendants,

DANDONG HONGXIANG INDUSTRIAL DEVELOPMENT CO. LTD.,
MA XIAOHONG,
ZHOU JIANSHU,
HONG JINHUA, and
LUO CHUANXU,

and others did knowingly conspire and agree to transport, transmit, transfer,

and attempt to transport, transmit, and transfer a monetary instrument and

funds to a place in the United States from or through a place outside the

United States, and from a place inside the United States to or through a place

outside the United States, knowing that the monetary instrument or funds

involved in the transportation, transmission, and transfer represented the

proceeds of some form of unlawful activity and knowing that such

transportation, transmission, or transfer was designed in whole or in part to

conceal or disguise the nature, the location, the source, the ownership, and the

control of the proceeds of the specified unlawful activity, and with the intent to

promote the carrying on of the specified unlawful activity, to wit: violations of

the International Emergency Economic Powers Act, Title 50, United States

Code, Section 1705, as described in Attachment B, contrary to Title 18, United

States Code, Sections 1956(a)(2)(B)(i) and 1956(a)(2)(A), all in violation of Title

18, United States Code, Section 1956(h).

4

**Count Three**
**(International Emergency Economic Powers Act)**

From in or about March 2013 to in or about June 2013, in Essex County, in the District of New Jersey, and elsewhere, the defendants,

DANDONG HONGXIANG INDUSTRIAL DEVELOPMENT CO. LTD.,
MA XIAOHONG,
ZHOU JIANSHU,
LUO CHUANXU, and
HONG JINHUA,

did knowingly and willfully violate and evade and avoid the restrictions imposed by the Office of Foreign Assets Control, U.S. Department of the Treasury, under the Weapons of Mass Destruction Proliferators Sanctions Regulations, Title 31, Code of Federal Regulations, Section 544.101, *et seq.*, by providing services on behalf of and for the benefit of a Specially Designated National, to wit, Korea Kwangson Banking Corp., without first having obtained a license from the Office of Foreign Assets Control, in violation of Title 50, United States Code, Section 1705(c), Title 31, Code of Federal Regulations, Sections 544.201 and 544.205, and Title 18, United States Code, Section 2.

5

## **ATTACHMENT B**

I, Bryan R. Greene, being duly sworn, depose and say:

1.      I am a Special Agent of the Federal Bureau of Investigation ("FBI")
and have been employed with the FBI for approximately five years.  I am
authorized to investigate violations of laws of the United States, and to execute
arrests, and search and seizure warrants.  Your affiant is currently assigned to
the FBI Newark Division Counter-Intelligence Squad, and has received training
in various aspects of law enforcement, including investigating violations of
United States laws and regulations relating to the illegal export of commodities
and technologies from the United States.  I have conducted and/or participated
in criminal investigations involving these laws and regulations.

2.      Because this affidavit is being submitted for the limited purpose of
establishing probable cause for a criminal complaint, I have not included every
detail of every aspect of the investigation.  Rather, I have set forth only those
facts that I believe are necessary to establish probable cause for this criminal
complaint.  Unless specifically indicated, all conversations and statements are
related in substance and in part.  Dates of events in this affidavit are asserted
as having occurred on or about the asserted date.

## Introduction

3.      As set out in more detail below, the individual defendants and their co-conspirators conspired to (a) evade U.S. economic sanctions through Dandong, a China-based trading company, and several of its front companies, by facilitating U.S.-dollar monetary transactions through the United States on behalf of a sanctioned entity in the Democratic People's Republic of Korea ("North Korea" or "DPRK"), and (b) launder the proceeds of that criminal conduct, including in and though U.S. financial institutions.

4.      Following the designation by the Office of Foreign Assets Control ("OFAC"), United States Department of the Treasury, of certain North Korean companies as Specially Designated Nationals ("SDNs"), Ma Xiaohong ("MA"), a Chinese national and the majority owner of the China-based trading company Dandong Hongxiang Industrial Development Co., Ltd, ("DHID"), conspired with other senior managers working for her company to create numerous front companies that were subsequently used in financial transactions designed to evade U.S. sanctions related to North Korea.  Specifically, the front companies processed transactions funded and/or guaranteed by Korea Kwangson Banking Corporation ("KKBC") after its designation as an SDN by OFAC on August 11, 2009, pursuant to Executive Order 13382.  At times, DHID and its controlled front companies (collectively the "DHID Entities") managed the full logistical chain of commodity contracts to ensure the performance and payment of specific purchases in U.S. dollars that were in fact guaranteed or funded by KKBC for North Korea-based entities.  OFAC sanctions prohibited

such U.S. dollar transactions for the benefit of an SDN. At other times, the DHID Entities served as financial intermediaries for U.S. dollar transactions between North Korean-based entities who were being financed by KKBC and suppliers in other countries in order to evade the restrictions on U.S. dollar transactions. To facilitate this conduct, MA, DHID and officers and employees of DHID used the DHID front companies to establish numerous bank accounts in the name of the DHID front companies at various banks in China. Willful violations of OFAC's sanctions are criminal violations of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706.

5. As part of its sanctions evasion scheme, DHID also repeatedly engaged in international money laundering in violation of 18 U.S.C. § 1956(a)(2) and a conspiracy to engage in international money laundering in violation of 18 U.S.C. § 1956(h). Specifically, DHID and its front companies repeatedly transported, transmitted and transferred funds from a place outside the United States to or through a place inside the United States, and from a place inside the United States to or through a place outside the United States (i) with the intent to promote the carrying on of specified unlawful activity, to wit, a violation of IEEPA; and (ii) knowing that the funds involved in the transportation, transmission and transfer represented proceeds of some form of unlawful activity and knowing that the transportation, transmission and transfer were designed in whole or part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity, to wit, a violation of IEEPA. The DHID front companies were

3

thus established to enable the transfer and transmittal of funds into and out of the U.S. in violation of IEEPA and to conceal that the funds were the proceeds of an IEEPA violation.

## Background

### A. Legal Authorities

6.      IEEPA authorizes the President of the United States to impose economic sanctions in response to an unusual or extraordinary threat to the national security, foreign policy, or economy of the United States when the President declares a national emergency with respect to that threat.

7.      On November 14, 1994, the President issued Executive Order 12938, finding "that the proliferation of nuclear, biological, and chemical weapons ("weapons of mass destruction") and of the means of delivering such weapons, constitutes an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States, and [declaring] a national emergency to deal with that threat."

8.      On June 28, 2005, the President issued Executive Order 13382 ("Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters") to target proliferators of weapons of mass destruction ("WMD") and their support networks and deny designated proliferators access to the U.S. financial and commercial systems. To implement that order, Executive Order 13382 authorized the United States Secretary of the Treasury, in consultation with the Secretary of State, "to take such actions, including the promulgation of rules and regulations, as may be necessary to carry out the

4

purposes" of the Executive Order.  Pursuant to that authority, on April 13, 2009, the Secretary of the Treasury promulgated the "Weapons of Mass Destruction Proliferators Sanctions Regulations" (the "WMDPSR"), 31 C.F.R. § 544.101 *et seq.*

9.     Among other things, Executive Order 13382 and the WMDPSR:

a.     Authorized OFAC to sanction individuals and entities facilitating the proliferation of WMDs by placing such individuals or entities on the SDN List, 31 C.F.R. § 544.201(a);

b.     Prohibited transactions or dealings, except as authorized or licensed by OFAC, by any U.S. person or within the United States with individuals and entities who have been placed on the SDN list, including (a) "[T]he making of any contribution or provision of funds, goods, or services by, to, or for the benefit of any person [on the SDN list]"; and (b) "[T]he receipt of any contribution or provision of funds, goods, or services from any person [on the SDN list]," 31 C.F.R. § 544.201(b); and

c.     Prohibited any transaction by a U.S. person or within the United States that evades or avoids, has the purpose of evading or avoiding, or attempts to violate any of the prohibitions set forth in Executive Order 13382 and the WMDPSR, 31 C.F.R. § 544.205.

10.     Pursuant to Executive Order 13382 and the WMDPSR, a non-U.S. person could not cause within the United States the provision of financial or

5

other services by a U.S. person for the benefit of a person or entity on the SDN list, except as authorized or licensed by OFAC, 31 C.F.R. § 544.405.

11.     For purposes of Executive Order 13382 and the WMDPSR, a "U.S. person" included any entity such as a financial institution organized under the laws of the United States or any jurisdiction within the United States, 31 C.F.R. § 544.312.

12.     On August 11, 2009, OFAC designated KKBC pursuant to Executive Order 13382 as a Specially Designated National in connection with the proliferation of weapons of mass destruction, thereby subjecting KKBC to the prohibitions contained in 31 C.F.R. Part 544, Subpart B.

13.     At no time before or after this designation did KKBC apply for, receive, or possess a license or authorization from OFAC to engage in any transaction or dealing with a U.S. person or within the United States.

**B. Banking Practices**

14.     To obtain goods and services in the international market place, as North Korea must, it needs access to U.S. dollars because some international vendors require purchases to be made in dollars. North Korea is known to rely on U.S. dollars to conduct international financial transactions. When businesses engage in U.S. dollar transactions overseas, those funds still must be cleared through a bank in the United States. Accordingly, North Korea and North Korean entities need access to the U.S. financial system when engaging in U.S. dollar transactions.

6

15.     A correspondent bank is a financial institution that provides services on behalf of another, equal or unequal, financial institution. It can facilitate wire transfers, conduct business transactions, accept deposits and gather documents on behalf of another financial institution. Correspondent banks are able to support international wire transfers for their customers in a currency that the foreign customer banks normally do not hold on reserve, such as U.S. dollars. Correspondent banks in the U.S. facilitate these wire transfers by allowing foreign banks, located exclusively overseas, to maintain accounts at the correspondent bank in the United States. It is through these accounts that the funds used in foreign U.S. dollar transactions clear.

16.     As a result of its designation as an SDN, KKBC lost access to the U.S. financial system, including the ability to conduct transactions in U.S. dollars. To conduct business in dollars, KKBC was forced to hide its financial transactions behind non-designated entities such as DHID and its front companies. By conspiring with the defendants and DHID Entities, KKBC thus was able to engage in financial transactions that transited the U.S. financial system, but in violation of OFAC's sanctions.

17.     One or more of the interbank processing centers involved in the international wire transfers on behalf or for the benefit of KKBC described herein were located in the District of New Jersey.

7

## The Defendants and Other Entities

### DHID

18.        Defendant DHID is a Dandong, China-based trading company.

Dandong, China, shares a border with North Korea, separated by the Yalu

River.   According to a lawfully-obtained company PowerPoint presentation

attached to an email from a DHID employee to MA and ZHOU (the "DHID

Presentation," attached as Exhibit 1), DHID is described as "an enterprise that

conducts [S]ino-North Korean import and export business."  DHID has a 10-

year history of conducting business with North Korea, and, as of 2010, had a

trading value of $250 million, that, according to the DHID Presentation,

accounted for "more than 20% of total trading volume" between the People's

Republic of China and North Korea during that year.  According to the DHID

Presentation, DHID's customers included: "1) [c]ompanies affiliated to [sic]

North Korean Government" that control the purchase of bulk goods and

equipment; "2) North Korean representatives stationed in China" who were sent

to China by DPRK companies to make their own purchase orders; "3) PRC

Ministry of Commerce bidding projects to aid North Korea"; and 4) small

companies or individuals who do not have a license to import/export on their

own, or need to use DHID to get a "better purchase price."  According to the

DHID presentation, DHID "selects companies [that are] subsidiary to [the]

Pyongyang Government and North Korean representatives [who] reside in

China."

19.        Defendant MA owns 80% of DHID.

8

20.      DHID also maintains an account at KKBC at a branch in Pyongyang, North Korea. Various KKBC bank statements from 2015 show U.S.-dollar denominated transactions between KKBC and DHID, including deposits and withdrawals, and show the overall balance in the account. (A translation of one such statement, "KKBC Statement," is attached as Exhibit 2.) At times, the description of the transaction pertains to the sale and/or purchase of a variety of goods including urea, anthracite coal, pesticides, vehicles, and general supplies. Shipping fees are also referenced. The statements demonstrate a ledger mechanism between KKBC and DHID. This mechanism allows KKBC to transact business in U.S. dollars through DHID and settle its outstanding dollar balance with DHID without transmitting any funds through the U.S. financial system, where such funds would be blocked because KKBC is an SDN.

21.      Most of the deposits in the statements described above provide line item explanations that give specific detail regarding the source of the funds, including a specific trading company or specific product linked to a deposit. Many of the deposit notations correspond with a separate line item indicating that funds were withdrawn by DHID around the time of a corresponding deposit. The withdrawal amounts are frequently identical to the noted deposits, consistent with DHID being funded by KKBC to make specific commodity purchases. Over two separate time periods between May 1, 2015 through June 5, 2015 and between August 1, 2015 and September 11, 2015, a total of $11,127,580.60 was remitted to DHID through this KKBC account. Of

this total, approximately $8,324,067.00 were cash withdrawals for DHID, and $2,803,513.60 were designated as wire transfers to DHID.

22.     At no time relevant to this Complaint has DHID applied for, received, or possessed a license or authorization from OFAC to engage in any transactions or dealings with a U.S. person or within the United States for the benefit of KKBC.

### DHID Front Companies

23.     To evade U.S. financial sanctions against North Korea and launder the proceeds of U.S. dollar transactions that were illegally processed by U.S. banks, DHID created and/or acquired a series of front companies. These front companies permitted DHID to hide the involvement of KKBC and other designated entities from U.S. banks. Because the transactions were being conducted in the name of a front company, it would appear to the U.S. correspondent bank that a British Virgin Islands ("BVI") or Hong Kong-based trading company was sending U.S. dollars to a non-sanctioned commodity or goods trader elsewhere outside the United States. In reality, KKBC was funding or guaranteeing the transaction.   With KKBC's role hidden behind DHID's front company, such transactions could then be made in U.S. dollars through the U.S. correspondent banks without being detected by the U.S. banks and blocked under the WMDPSR.

24.     DHID and the other defendants used at least 22 different front companies to engage in U.S. dollar transactions on behalf or for the benefit of DHID. Several of the front companies were created and/or acquired soon after

10

KKBC's designation, and others were created and/or acquired over time as DHID's U.S. dollar transactions for KKBC grew. The defendants and their co-conspirators established bank accounts in the names of the respective front companies at various banks in China. The Chinese banks had U.S. correspondent bank accounts that were part of the U.S. banking system. For most of these companies, the defendants, or those close to them, are listed as the CEOs and/or directors and/or sole shareholders.[1] Two such individuals are both employees of DHID and believed to be relatives of MA. They are referred to as "Individual X" and "Individual Y." A third individual, "Individual Z," is an employee of DHID. The front companies served as the defendants' alter egos. As set forth in greater detail below, many of the front companies shared the same addresses, and investigation of those addresses, including visits, has revealed that the businesses using the addresses did not appear to be operating out of the space, but rather merely used the addresses for registration purposes. In a couple of instances, scores of other purported companies share the same addresses. There was no legitimate business reason for DHID to go through the work and expense of setting up front companies to transact business in U.S. dollars, except to avoid U.S. sanctions. Similarly, there was no reason for KKBC to use DHID and the DHID front companies and pay them substantial markups for commodities if they could lawfully conduct and finance these transactions themselves.

---

[1] The documents obtained as part of this investigation frequently use the terms "director" and "CEO" interchangeably with regard to the front companies.

25.      The following front companies were used in the defendants'
sanctions evasion and money laundering scheme.

    a.  DHID BVI front companies – Four front companies were
    registered in the BVI:  Success Target Group Ltd., Best Famous
    Ltd., Fully Max Trading Ltd., and Sheen Fair Trading Ltd.
    Defendant LUO CHUANXU ("LUO") is identified as the CEO and/or
    sole shareholder of Success Target Group Ltd., and Best Famous
    Ltd.  Individual X is identified as the director and/or sole
    shareholder for Fully Max Trading Ltd. and Individual Y is
    identified as the director and/or sole shareholder for Sheen Fair
    Trading.   At least three of the four companies share the same
    address: Akara Bldg., 24 De Castro Street, Wickhams Cay I, Road
    Town, Tortola, British Virgin Islands.  This same office address is
    identified by OFAC as the address for DCB Finance Limited, a front
    company for North Korean Daedong Credit Bank. Both of these
    companies were designated by OFAC on June 27, 2013 pursuant
    to E.O. 13382 as SDNs in connection with the proliferation of
    weapons of mass destruction.

    b.  DHID Seychelles-based front companies – Two front
    companies were registered in the Seychelles: Go Tech Investment
    Ltd., and Unique One Development Ltd.   Defendant ZHOU
    JIANSHU ("ZHOU") was responsible for registering and/or
    acquiring these companies.  The sole shareholder and/or CEO

and/or director of both Go Tech and Unique One is identified as Individual X. The address for Unique One Development Ltd. is: Suite 13, First Floor, Oliaji Trade Centre, Francis Rachel Street, Victoria, Mahe, Republic of Seychelles. Public database information reveals that this is also the address for a Panamanian law firm that specializes in establishing shell companies and that assisted DHID in creating or acquiring many of its front companies, including Unique One Development Ltd.

    c.  DHID Hong-Kong based front companies – Thirteen front companies were registered in Hong Kong. Those companies, and their director(s) indicated in parentheses, are as follows:

- Flying Horse (HK) Ltd. (Individual Z);
- Beauty Chance (HK) Ltd. (LUO);
- Fanwell Limited (ZHOU);
- Hongxiang Industrial Development (H.K.) Limited (Individual Y and Sheen Fair Trading Ltd., a BVI-based front company that is mentioned above);
- Good Field Trading Company (defendant HONG JINHUA ("HONG"));
- Hong Kong Hugo Development, Ltd. (MA);
- Hong Kong Golden Ball Development Ltd. (Individual X);
- Hong Kong Win Dragon Development Ltd. (Individual X);
- Jiajia Holdings Ltd. (ZHOU);
- MK Vista Shipping & Business Co. Ltd. (MA);
- Nation Good (HK) Ltd. (Individual X and Fully Max Trading Ltd., a BVI-based front company that is mentioned above);
- Nice Field International Ltd. (HONG); and
- Win Trade Worldwide Limited, (ZHOU).

Of these 13 Hong Kong-based front companies, all but two (MK Vista Shipping & Business Co. Ltd. and Jiajia Holdings Ltd.) share the same registered address: Room 1502, 15/F, Keen Hung

Commercial Building, 80 Queen's Road East, Wanchai, Hong Kong. In late June 2016, a law enforcement visit to the address revealed that 80 Queen's Road East is a 24-story commercial building located in the Wanchai neighborhood of Hong Kong. A directory in the building listed Suite 1502 as occupied by only one company, and that company was not any of the DHID front companies. The 15th floor appeared to be occupied by three businesses, and Suite 1502 was located directly across from the elevators. Suite 1502 had an ornament hanging on the door and a name plate on the wall identifying the occupant as a company that is unaffiliated with any named herein. The building did not appear to be heavily traveled and no one was observed entering or exiting the business.

d. The defendants established and/or acquired three DHID front companies in Wales, England, and Anguilla, respectively. MA was listed as the CEO and/or director for two of the companies, Blue Sea Business Co. Ltd. ("Blue Sea") and Carbuncle Co. Ltd. ("Carbuncle"). Blue Sea was incorporated at the LA Bldg., 66 Corporation Road, Cardiff, S. Glam CF11 7AW, Wales. This location appeared to be a nondescript walk-up apartment with no signage and no exterior number, and, according to public database information, was the incorporation address for many other companies. Carbuncle was incorporated at 18A Lanchester Way, Daventry, Northants NN11 8PH, England. This address was

14

located in an industrial area with a few small wholesale
businesses, and was the registered address for several private
finance and investment funds.  The third of these front companies
was Deep Wealth Limited, which company appeared to be actively
managed by LUO.  The address for Deep Wealth was 25 Mason
Complex Stoney Ground the Valley, Anguilla.  This address was
also the registered address in Anguilla for a Panamanian law firm
that specialized in establishing shell companies and that assisted
DHID in creating and/or acquiring many of its front companies.

### MA

26.      MA is an approximately 45-year old Chinese national who resides
in Dandong, China.  As set forth above, she is the majority (80%) owner of
DHID and stood to benefit the most from the markups described below that
DHID, through the front companies, charged North Korean entities for
engaging in prohibited U.S. dollar transactions funded or guaranteed by KKBC.

27.      As noted above, MA was associated with several of the front
companies.  Records reveal that her Chinese identification number and/or her
Hong Kong identification number were used to register front companies in
Hong Kong, including MK Vista Shipping & Business Co. and Hong Kong Hugo
Development Ltd.  Also, and as noted above, MA is identified as the CEO
and/or director for Blue Sea and Carbuncle.  In at least one transaction in or
about January 2012, a North Korean diplomat posted in Nakhodka, Russia,
received MA's personal bank account information from defendant ZHOU to wire

15

MA's account approximately $3 million in Chinese currency so that DHID could facilitate a U.S. dollar payment on behalf of the North Korean diplomat.

28. MA also had knowledge that financial transactions involving North Korea could be subject to sanctions. As noted above in paragraph 18, based on evidence obtained from the execution of search warrants, agents discovered the DHID Presentation that had been sent to MA on or about February 15, 2012. The first slide is titled "Positioning and Marketing Strategy Analysis of "Hongxiang Group."[2] Below the title, where the name of the PowerPoint presenter usually appears, "President Ma Xiaohong" is written. It is in this PowerPoint presentation that the statements appear about the breadth of DHID's North Korean business quoted in paragraph 18 above. In a slide bearing the title "Disadvantages," the DHID Presentation states: "[B]usiness risks come with sensitive North Korean situation."

29. At no time relevant to this Complaint has MA applied for, received, or possessed a license or authorization from OFAC to engage in any transactions or dealings with a U.S. person or within the United States for the benefit of KKBC.

## ZHOU

30. ZHOU is the general manager of DHID and works directly for MA. He is approximately 45 years old and resides in Dandong, China.

---

[2] Liaoning Hongxiang Industrial Group is a China-based holding company affiliated with MA that operates as a parent company to a series of businesses, and most of these businesses use "Dandong Hongxiang" as part of their name. DHID is one such company.

31.     ZHOU is the director of at least three of the front companies. However, he was also involved in the creation or acquisition of several of the other front companies. For example, in or about January 2011, ZHOU communicated with an individual in Hong Kong selling "shelf companies." From a list he received with the names of 26 companies, ZHOU indicated his preference for seven companies that corroborating documents indicate were previously incorporated in Hong Kong, and ZHOU named the director of each shell company. Of the seven companies, ZHOU asked that all seven be registered with a known DHID employee. At least two of the companies ZHOU acquired transacted in U.S. dollars through the U.S. financial system. Additionally, ZHOU sent the Hong Kong company broker copies of Chinese identification cards for himself, LUO, HONG, and two other DHID employees.

32.     In or about July 2011, ZHOU exchanged emails with Individual A at a Panamanian law firm for the purpose of establishing and/or acquiring five of the front companies. Two of those companies were the BVI-based companies Success Target Group Ltd. ("Success Target") and Best Famous Ltd. ZHOU identified LUO as the CEO and shareholder for both of the BVI-based companies. As set out below in paragraph 62, Success Target is one of the companies through which DHID made transactions through the U.S. financial system for the benefit of KKBC in violation of IEEPA. ZHOU also established and/or acquired the two Seychelles-based companies, Go Tech Investment Ltd., and Unique One Development Ltd. ZHOU identified Individual X as the sole shareholder and the CEO for these two front companies.

17

33.     In or about April 2015, Individual B from a Panamanian law firm emailed ZHOU to inform him that the corporate fees for some of the front companies he created and/or acquired were due. Individual B provided a list of the four BVI-based front companies and the two Seychelles-based companies that, according to Individual B, ZHOU's "company" (DHID) registered.

34.     ZHOU had direct knowledge of the sanctions against North Korea in general and against KKBC in particular. On or about June 20, 2011, ZHOU received an email from Individual A at the Panamanian law firm in which Individual A stated that, due to international sanctions, banks do not allow companies with North Korean stockholders or CEOs to open bank accounts. Individual A admonished ZHOU to plan well before setting up companies. On or about March 1, 2013, ZHOU received an email from representatives of a company in Switzerland. The email included two attachments: one was a publicly available list of North Korean sanctions designations; the other was the first page of an unsigned contract listing DHID, Fully Max Trading Limited, and the Swiss company as contracting parties. The contract page included the statement, "We, DANDONG HONGXIANG INDUSTRIAL DEVELOPMENT CO., LTD. & FULLY MAX TRADING LIMITED, herewith confirm that we are not owned or controlled or in any way linked to a sanctioned North Korean person/entity." On or about March 5, 2013, ZHOU emailed the Swiss company representatives the contract page with what appears to be his signature on the separate signature lines above Fully Max Trading Limited and DHID, respectively. ZHOU also sent with the email an attached copy of the multi-page

18

SDN List with what appears to be ZHOU's initials on the bottom corner of each page. KKBC appears on the list. A copy of the contract page and SDN List are attached as Exhibit 3 (labelled "Contract and SDN List").

35.     At no time relevant to this Complaint has ZHOU applied for, received, or possessed a license or authorization from OFAC to engage in any transactions or dealings with a U.S. person or within the United States for the benefit of KKBC.

## LUO

36.     LUO is a financial manager at DHID and has worked as an assistant to MA and ZHOU. LUO is approximately 30 years old and resides in Dalian, China. LUO was associated with several of the front companies that were used to conduct U.S. dollar transactions on behalf of North Korean-based entities. LUO was also involved in making payments to vendors who supplied commodities to the DPRK and was named CEO and/or sole shareholder of at least two of the front companies.

37.     Emails sent to and from LUO show that LUO was aware of economic sanctions prohibiting services on behalf of North Korea. For example, in or around June 2011, LUO communicated with Individual C from a trade consulting firm in Germany. In these emails, LUO and Individual C avoided using the name of the country (North Korea) from which the commodities – which they call "spices" -- originate. In one email, dated June 7, 2011, LUO asked Individual C if he was familiar with several "spices" native to Northeast Asia, noting that the "spices" "come from that place [and they] want

19

to export them to European countries." Individual C responded the following day, noting, "I understand what you are talking about, and will look for importers here in Europe. I am sure they will have a lot of questions, one of those will be: are the items certified to be imported into the EU (European countries)." In a follow-up email, Individual C directly referenced LUO's use of "that place" to describe the country of origin of the "spices," stating "I like and understand that description!" In further follow up correspondence in or about August 2011, Individual C asked whether LUO heard anything from "that country."

38.     LUO also received the copy of the SDN List that included KKBC and, as described in paragraph 34 above, ZHOU sent to the Swiss business's email address.

39.     At no time relevant to this Complaint has LUO applied for, received, or possessed a license or authorization from OFAC to engage in any transactions or dealings with a U.S. person or within the United States for the benefit of KKBC.

## HONG

40.     HONG is the deputy general manager of DHID and works for MA. HONG is approximately 44-years-old and resides in Dandong, China. HONG coordinated activities with other DHID employees, was associated with some of front companies as part of this overall scheme, and managed U.S. dollar bank account information on behalf of DHID front companies. HONG was associated

20

with some of the front companies using her own personal identifying information, and she appears as the director for some of those companies.

41.     HONG had personal knowledge of the U.S. dollar transactions DHID was conducting on behalf of and for the benefit of KKBC. HONG maintained regular email contact with at least two different KKBC representatives, and was involved in managing banking activities between DHID and KKBC. HONG received KKBC bank statements summarizing U.S. dollar financial transactions between KKBC and DHID, and these statements were printed on official KKBC letterhead. The transactions involved U.S. dollars moving into and out of a DHID account held at a KKBC branch in North Korea to fund commodity purchases made by DHID on behalf of North Korean trading companies that were funded and/or guaranteed by KKBC. Some of the transactions involved the sale and/or purchase of urea fertilizer, anthracite coal, pesticides, vehicles, and general supplies. The attachments reflect a ledger mechanism between KKBC and DHID, using a Pyongyang-based U.S. dollar account in DHID's name that was held at KKBC. This mechanism allowed KKBC to transact in U.S. dollars through DHID and settle its outstanding balance with DHID without having to access the U.S. financial system.

42.     The bank statements, obtained through a court-authorized search warrant, referenced bank account #0115602, and this account is a U.S dollar-based bank account held by a KKBC branch in Pyongyang, North Korea, on behalf of DHID. This account funded DHID for the purpose of commodity

21

purchases made using U.S. dollars. KKBC remitted funds to DHID in U.S. currency as reimbursement for payments the DHID front companies were making to vendors for purchases on behalf of North Korean entities. As discussed above, the bank statements served as ledgers to keep track of transactions between KKBC and DHID (see Exhibit 2). While the statement line items referenced U.S. dollar transfers linked to shipping expenses, port fees, and payments from specific trading companies, some of the line items referenced specific products such as urea fertilizer, pesticides, coal, chemicals and other general supplies. Several deposits provided line item explanations that gave specific detail about the source of the funds, including a specific trading company or specific product linked to a deposit. Many of the deposit notations corresponded with a separate line item indicating that funds were withdrawn and transferred to DHID around the time of a corresponding deposit. The withdrawal amounts were frequently identical to the noted deposits, indicating that DHID was being funded by KKBC to make specific commodity purchases. HONG had a role in managing these records.

43.     In addition, the bank statements attached to emails sent to HONG had file names that were not logically connected to the files' contents. For example, the attachments were given names such as "passport details," "Beijing-PO", "contract", and "KHABA."

44.     At no time relevant to this Complaint has HONG applied for, received, or possessed a license or authorization from OFAC to engage in any

22

transactions or dealings with a U.S. person or within the United States for the benefit of KKBC.

## **Specific Transactions Conducted in Violation of IEEPA and Money Laundering Laws**

### **2009 Commodity Transactions Guaranteed by KKBC**

45.     In or around December 2009, the KKBC branch office in Dandong contracted with DHID to be a third-party payer on a $6.85 million contract to purchase refined sugar using U.S. dollars.  On the contract, DHID is identified as "the agent of the North Korean party."

46.     On or about December 1, 2009, ZHOU received an email from a Commercial Counselor with the DPRK Embassy in Beijing that contained the subject line "Urgent."  The email contained two attachments, one titled "Third-party payer contract.docx" and the other "Korea Kwangson Bank Dandong Representative Office.docx."  Both documents were written in Korean.  The Commercial Counselor requested the documents be given to "CEO MA."

47.     The first document (the "Guarantee"), titled "Korea Kwangson Bank Dandong Representative Office.docx" contained references to DHID's role in the transaction as "the agent of the North Korean party" for a contract "guaranteed" by KKBC and states "guarantee of payment" at the top of the document. A copy of the Guarantee is attached as Exhibit 4 (labelled "Guarantee of Payment").

48.     The second document (the "Contract") contained references for the contract between North Korea Company A and a Canadian company.  A copy of the Contract is included in Exhibit 4, following the Guarantee.

23

49.     According to the Guarantee, KKBC's Dandong Representative Office would pay DHID $6,850,000.00 to guarantee the payments of the Canadian company. Once DHID received the guarantee payment from KKBC, DHID would make the payment on behalf of North Korean Company A.

50.     The other attachment to this email contained the title "Third-party payer contract" (the "Contract"), and outlines the specific contract obligations to be undertaken by DHID related to the payment to the Canadian company. The Contract provided for a 10% commission. The Contract also showed that KKBC's Dandong branch office was managing DHID's proxy role with KKBC. While KKBC agreed to pay DHID $6,850,000, the Contract specified that DHID would pay the Canadian company $5,887,500, which was approximately 86% of the total amount guaranteed to DHID. Thus, the actual compensation to DHID was a markup of approximately 14% over its purchase from the supplier.

### 2009-2010 Urea Fertilizer Purchase

51.     Shortly after KKBC's designation as an SDN, defendants ZHOU and LUO coordinated U.S. dollar payments to a Singapore-based urea distributor ("Singapore Distributor") for the benefit of KKBC. On or about September 10, 2009, ZHOU sent an email to a representative from North Korea Company B. The purpose of the email was to request payment for 17,700 metric tons of urea fertilizer that had shipped in June 2009. ZHOU referenced the contract as CH-HX-2009UR0608, and provided the following table documenting the shipment details, bill of lading dates, and total cost for the fertilizer:

24

| Ship Name | B/L Date | North Korea Company B Confirmed Quantity | Unit Price | Total Price | Payment Due |
|---|---|---|---|---|---|
| VESSEL A | 2009/06/20 | 12,190.900MT | US$405/MT | US $4,937,314.50 | 2009/09/20 |
| VESSEL B | 2009/06/20 | 1,008.855MT | US$405/MT | US $408,586.28 | 2009/09/20 |
| VESSEL C | 2009/06/23 | 4,500.245MT | US$405/MT | US $1,822,599.22 | 2009/09/23 |
| TOTAL | | 17,700.000MT | | US $7,168,500.00 | |

52.     The table above shows that North Korea Company B owed DHID $7,168,500.00 on the contract. One month later, on or about October 13, 2009, ZHOU sent an email to a representative of North Korea Company B and copied the Commercial Counselor of the DPRK embassy in Beijing as a notification that DHID received $4,168,500 for contract CH-HX-2009UR0608. ZHOU noted that the payment was received from the "KKBC Dandong office," and indicated that the remaining balance due was $3,000,000. On or about November 12, 2009, a follow-up email from ZHOU to a representative of North Korea Company B included a letter that was carbon copied to the DPRK embassy in Beijing and stated that KKBC had submitted the final payment of $3,000,000 to DHID for contract CH-HX-2009UR0608.

53.     KKBC funded DHID directly to pay for the fertilizer purchases that were shipped to North Korea Company B in North Korea in June 2009. DHID thus caused the U.S. dollars it provided to transit through U.S. correspondent bank accounts to pay the Singapore Distributor, which was paid in seven installments totaling $3,494,500 between December 4, 2009 and January 6,

25

2010. These seven payments to the fertilizer supplier were made by two DHID controlled front companies: Carbuncle and Blue Sea.

54.     Although DHID front companies Blue Sea and Carbuncle made the final payments to the fertilizer supplier, as described above, bank records show that DHID funded only Blue Sea during the same time period that Blue Sea and Carbuncle paid the supplier. From December 1, 2009 through January 15, 2010, DHID made five payments in the form of wire transactions from its accounts at China Bank 1 to Blue Sea's bank accounts at China Bank 2 totaling $3,463,441.64. Each of the five wire transfers from DHID to Blue Sea (totaling $3,463,441.64) were moved through the two Chinese correspondent banking accounts in the U.S. maintained at U.S. Bank 1. The wires included a message for each payment referencing "payments for goods/trade."

55.     The above-referenced wires initiated and sent on behalf of DHID through U.S. Bank 1 in the United States were processed in Newark, New Jersey, in the District of New Jersey.

56.     In sum, DHID, through its front companies, entered into a contract with North Korea Company B requiring the company to pay DHID $405 per metric ton of urea fertilizer. DHID, again through its front companies, subsequently contracted with the Singapore Distributor to purchase the urea fertilizer at $320 per metric ton. The resulting difference between the price North Korea Company B agreed to pay DHID and what DHID agreed to pay the Singapore Distributor reflected a 21 percent profit or markup. Based on my training and experience, business entities sometimes charge customers higher-

26

than-normal prices to account for the higher risk the entities take on when they engage in unlawful transactions on behalf of their customers.

## 2012 Urea Fertilizer Purchase

57.      On or about December 6, 2011, ZHOU communicated by email with a China-based urea distributor ("Chinese Distributor") about a contract for the purchase of urea by DHID.  DHID was coordinating this purchase on behalf of North Korea Company B.  In his email, ZHOU informed a representative from the Chinese Distributor that the contract, which was for the purchase of 3000 metric tons of urea, was between the Chinese Distributor and Fanwell Limited ("Fanwell").  Fanwell was one of DHID's front companies and, as indicated in paragraph 25(c) above, had been registered in Hong Kong with ZHOU as the director.

58.      Around the same time, LUO coordinated a purchase of an additional 3000 metric tons of urea with the Singapore Distributor.

59.      On or about December 25, 2011, ZHOU sent an email to a representative of North Korea Company B that contained an offer to sell North Korea Company B 6,000 metric tons of urea fertilizer under an agreement whereby KKBC would provide a 30-day unconditional guarantee letter to support the purchase.  In a later email by ZHOU to a representative of North Korea Company B, dated January 7, 2012, ZHOU made clear that to perform on the contract, he would require KKBC's guarantee letter before January 9, 2012.

27

60.     On or about January 16, 2012, a representative from the Singapore Distributor sent LUO an email containing documents pertaining to a 3000 metric ton purchase of urea fertilizer from the Singapore Distributor, but the documents show DHID and North Korea Company B as the parties to the transaction instead of the Singapore Distributor and DHID or one of its related front companies.  The bill of lading indicated that the urea shipment was to be loaded from Qingdao Port, China, and shipped to Nampo Port in the DPRK. The invoice and packing list were stamped with MA's signature.

61.     On or about January 27, 2012, ZHOU sent a representative of North Korea Company B similar shipping information for the second 3000 metric ton shipment, which the Chinese Distributor was supplying.  The commercial invoice and packing list for this shipment were likewise stamped with MA's signature.

62.     DHID front companies Fanwell and Success Target paid the Chinese and Singapore Distributors the agreed-upon price in U.S. dollars for the urea, and both of these payments were made via China Bank 2 and cleared through its U.S. correspondent bank accounts.

63.     DHID, through its front companies, received from North Korea Company B an approximately 22 percent markup over the purchase price from the Chinese Distributor, since the purchase price between the DHID front companies and supplier was $1,275,000, and the commercial invoice showed that North Korea Company B paid DHID $550.00 per metric ton totaling $1,642,447.40.

64.      DHID contracted with the Singapore Distributor for the remaining 3,000 metric tons of urea fertilizer on the contract at a purchase price for $425.00 per metric ton, for a total of $1,275,002.125.  Under this contract, the fertilizer would be shipped via Vessel D.  The invoice listed the seller as Singapore Distributor, the buyer as DHID, and listed North Korea Company B in the "Notify" section of the invoice.   The bill of lading confirmed that the fertilizer was shipped from Dalian Port, China, and was destined for Nampo Port, DPRK.  North Korea Company B paid DHID $550.00 per metric ton for 3,000.005 metric tons, totaling $1,650,002.75.  The invoice and packing list were stamped with the signature of DHID General Manager MA.

65.      The difference in the purchase price paid by DHID and the price charged to North Korea Company B was $125.00 per metric ton, which represents a profit to DHID on this contract of $750,000.00.  This profit, or markup, to DHID comprises approximately 22% of the value of the contract price.  Such an inflated profit, or markup, is consistent with the legal risk DHID was taking on these kinds of transactions.

### 2013 Urea Fertilizer Purchase

66.      On or about March 6, 2013, ZHOU sent an email to a representative of North Korea Company B that included a quote by DHID to sell North Korea Company B 20,000 metric tons of urea.  Under the terms of the offer, DHID agreed to sell North Korea Company B, 20,000 tons of urea packaged in 50 kg. bags to be shipped from a port in China at the price of $480 per metric ton.  The email further specified that the offer would be valid until

29

March 10, 2013. The offer also stated that DHID must receive the guarantee from KKBC that the funds have been deposited by North Korea Company B before loading the cargo.

67.     On or about March 22, 2013, ZHOU sent an email to a representative of North Korea Company B that contained a finalized contract. In this email, ZHOU further stated that the delivery of the 20,000 metric tons of urea fertilizer would be completed within 30 days after "deposit to Kwangson Bank [KKBC] is completed."

68.     In or around May 2013, LUO arranged for the purchase of 10,000 metric tons of urea with a representative of the Singapore Distributor. The agreement to purchase the urea was between Hongxiang Industrial Development (H.K.) Limited ("Hongxiang"), another DHID controlled front company as identified in paragraph 25(c) above, and the Singapore Distributor. However, bank records show that Fully Max Trading Ltd. ("Fully Max"), one of the BVI-based DHID front companies, paid the supplier $3,889,388, in a series of seven installments between May 8, 2013 and June 18, 2013.

69.     In my training and experience, the use of multiple shell companies in a single transaction is another means of hiding the true parties in interest and in evading detection by authorities for illegal conduct. All payments for these transactions transited through the U.S. financial system. During this same time period, from May 6, 2013 through June 21, 2013, bank records show Fully Max received a deposit of $4,835,530 into its account at China Bank 2 from a DHID account. These funds transited the U.S. financial system

through a U.S. correspondent banking account at U.S. Bank 1 and processed through U.S. Bank 1's facility in Newark, New Jersey, within the District of New Jersey.

70.       DHID,  through its front companies, received from North Korea Company B an approximately 23 percent markup over the purchase price from the Singapore Distributor, since the purchase price between the DHID front company Hongxiang and the Singapore Distributor was $389 per metric ton of urea, and DHID's original contract with North Korea Company B was for $480 per metric ton.  Again, such an inflated profit, or markup, is consistent with the legal risk DHID was taking on these kinds of transactions.

# Exhibit 1: "DHID Presentation"

## Positioning and Marketing Strategy Analysis of Hongxiang Group

**President : Ma Xiaohong**

---

## Agenda

I. Product description

II. Analysis of positioning strategy

III. Analysis of marketing combination strategy

IV. Proposals regarding corporation's continuous development

---

## I. Product description

Background:

Dandong Hongxiang Industrial Development Co., Ltd is an enterprise that conducts sino-North Korean import and export business. After 10 years' development, it has become a local star enterprise with North Korean export/import value ranking first in three consecutive years. It is trading value reached 250 million US dollar in 2010 and accounted for more than 20% of market share.

---

## I. Product description

Positioning description:

Hongxiang provides merchandises from China and other countries to North Korea import and export companies. It also provides merchandised produced in North Korea to Chinese customers and customers from other countries. This is because of the advantages Hongxiang has, which are abundant experiences, comprehensive qualifications and procurement/sales channels.

---

## II. Analysis of positioning strategy

3C—customer analysis

1. Companies affiliated to North Korea government: control nation's large purchase order for bulk goods and equipment, with largest volume of trade.
2. North Korean representatives stationed in China: sent by North Korean companies who have their own purchase orders. Because they have very good relationships in their country, it is also possible to secure large orders from them.
3. PRC Ministry of Commerce bidding projects to aid North Korea
4. Small companies or individual who do not have export qualification or who cannot get better purchase price will utilize Hongxiang's channel

---

## II. Analysis of positioning strategy

3C—analysis of the competitors

1. Peer competition
2. Vendor may circumvent us and have direct contact with customers
3. Transfer or demotion of current North Korean customers. New leader may choose to use new client and cause the lost of existing client
4. New companies who are interested in sino-North Korean trade
5. Government aid to North Korea that lead to a decrease in purchase

1

## II. Analysis of positioning strategy

3C—company analysis

Advantages:
1. Market leader, account for more than 20% of sino-North Korean trade volume
2. Has better and more experienced high level managing team than our peers.
3. Has multiple import/export quota and qualification (coal, iron ore, rice, corn, char, ferroalloy, National Grade A Qualification for export and foreign aid)
4. Annual increase of 30% in sales
5. Good reputation and credibility
6. Strong financial strength and bank credits
7. Good relationship with North Korea government, embassy and consulate

## II. Analysis of positioning strategy

3C—Company analysis

Disadvantages:
1. There is no sales department currently, overlooked the importance of sales
2. Lack of good Korean interpreter.
3. Business risks come with sensitive North Korean situation.
4. Payment after delivery and tally trade increases the risk of debt
5. Procurement and sales capability cannot meet the clients' requirement at some occasions.

## II. Analysis of positioning strategy

STP—Hongxiang marketing tree



## II. Analysis of positioning strategy

STP—Select target market; current customer
· Hongxiang selects companies subsidiary to Pyongyang Government and North Korean representatives reside in China as our target market.
· In the most recent three years, China to North Korea export volume increased 30% annually. We reasonably believe that, with the requirement of North Korean domestic economic development, there will be more than 10% increase in quantity and types of merchandise purchased by North Korea.

## II. Analysis of positioning strategy

STP—Target detailed market positioning
Every year, the need to purchase bulk goods in large scale and the need for their national projects from the companies subsidiary to North Korean government and their representatives among our current customers have not been met. This the path of profit growth with minimal resistance.
Refreshing market positioning
    Improve procurement capability, increase number of merchandises, let the customer understand that we are an all-around service provider, not just one specialized in certain areas.

## Combination of sales and marketing

Product—create product procurement database, increase procurement types
Price—Lower the price to customers who have better payment condition; increase the price to those who have risk or will pay after guarantee to reduce cost and risk
Promotion—Place bill boards at crossings with large number of North Koreans. Open exhibition booths for Hongxiang products at central location of boarder crossing.
Channels—Attract more customer to become target customer through exhibition booths, get to know new North Korean customers through current ones, attend spring and fall merchandise exhibition in North Korea annually.

2

## Proposals regarding corporation's continuous development

1. Emphasize on sales and marketing, establish marketing department, and hire person with marketing experience to manage it.
2. Secure current customers by better service and price in comparison to our peer competitors, ensure no customer loss.
3. Because of the information seclusion and unstable situation of North Korea, select Chinese brand with North Korean recognition and negotiate aiming to obtain the exclusive distribution rights in North Korea.
4. Improve the reserve and cooperation of professional staff to provide technical support based of different customer requests.
5. Integrate North Korea customer resource, expand existing business scope, realize diversified development.

thank you!

3

# Exhibit 2:
# "KKBC Statement"





Korea Kwangson Banking Corp.

0115602

Dandong Hongsang Industrial
Development Company, Limited

August 30, 2015 - September 11, 2015

| No | Date | Description | Deposit | Withdrawal | Balance | Currency: USD Transaction with |
|---|---|---|---|---|---|---|
| 1 | 8/31/2015 | supplies payment (requesto⬛ | | | 82,957.03 | 33rd |
| 2 | 8/31/2015 | Wire transfer USD: 27,074.0⬛ | 27,074.00 | | | |
| 3 | 9/1/2015 | cash withdrawal USD: 206,600.00 - Dandong Trading Representative Kim, | | 27,074.00 | 55,883.0⬛ | |
| 4 | 9/1/2015 | cash withdrawal USD: 200,000.0⬛ | | 206,600.00 | -150,716.97 | Dandong Hongsang Industrial Development Company, Limited |
| 5 | 9/1/2015 | wire transfer deposit – Trade Ministry | | 200,000.00 | -350,716.97 | Dandong Hongsang Industrial Development Company, Limited |
| 6 | 9/1/2015 | wire transfer deposit | 206,600.00 | | -144,116.97 | DANDONG HONGXIANG |
| 7 | | | 500,000.00 | | 355,883.03 | DANDONG HONGXIANG |
| 8 | 9/7/2015 | cash deposit USD: 70,000.00 ⬛ vehicle cost | | | | Dandong Hongsang Industrial Development Company, |
| 9 | 9/7/2015 | wire transfer USD: 70,000.00 ⬛ | 70,000.00 | | 425,883.03 | Limited |
| 10 | 9/7/2015 | wire transfer deposit - ⬛ | | 70,000.00 | 355,883.03 | ⬛ |
| | 9/7/2015 | supplies payment | 47,000.00 | | 402,883.03 | Dandong Hongsang |
| 11 | 9/8/2015 | cash deposit USD: 30,000.00 ⬛ | | 47,000.00 | 355,883.03 | Dandong Hongsang Industrial Development Company, |
| 12 | 9/8/2015 | cash deposit USD: 27,000.00 ⬛ | 30,000.00 | | 385,883.03 | Limited |
| 13 | 9/8/2015 | cash withdrawal USD: 200,000.00 ⬛ | 27,000.00 | | 412,883.03 | Dandong Hongsang Industrial Development Company, Limited |
| 14 | 9/8/2015 | wire transfer USD: 57,000.00 ⬛ | | 200,000.00 | 212,883.03 | Dandong Hongsang Industrial Development Company, |
| 15 | 9/8/2015 | wire transfer deposit - ⬛ | 57,000.00 | | 155,883.03 | Limited |
| 16 | 9/10/2015 | cash withdrawal USD: 180,000.00 - ⬛ | | 180,000.00 | 335,883.03 | Dandong Hongsang |
| 17 | 9/10/2015 | cash withdrawal USD: 300,000.00 ⬛ | | 180,000.00 | 155,883.03 | Dandong Hongsang Industrial Development Company, Limited |
| | | | | 30,000.00 | -144,116.97 | Dandong Hongsang Industrial Development Company, Limited |

Previous balance: 55,883.03

| | | Total | 1,087,674.00 | 1,287,674.00 | Balance: | -144,116.97 |

[There is a watermark on the page that says "Kwangson" and the company logo.]

1

⬛ PYONGYANG D.P.R. OF KOREA

# Exhibit 3:
# "Contract and SDN List"



丹东鸿祥实业发展有限公司

## DANDONG HONGXIANG INDUSTRIAL DEVELOPMENT CO., LTD.

公司地址：中国辽宁省丹东市振兴区 96 号太阳财富中心 A 座 16 层 1601 室

16th Floor 16,  Gold tower Sun fortune center, No.96 Jiajiang Street , zhenxing district Dandong, Liaoning, PRC

Tel: +86 415 3116996 / Fax: +86 415 3116966

&

## FULLY MAX TRADING LIMITED.

AKARA BLDG.,24 DE CASTRO STREET,WICKHAMS CAY I,ROAD TOWN,TORTOLA,BVI.

Tel: 0086-415-3116997 / Fax: 0086-415-3116955

| | | |
|---|---|---|
| TO : | | ███████████████ |
| Telefax No | : | ███████████████ |
| From | : | DANDONG HONGXIANG INDUSTRIAL DEVELOPMENT CO., LTD. |
| | | 丹东鸿翔实业发展有限公司 / Tel: +86 415 3116996 / Fax: +86 415 3116966 |
| | | FULLY MAX TRADING LIMITED. |
| | | Tel: 0086-415-3116997 / Fax: 0086-415-3116955 |

| | | | |
|---|---|---|---|
| Date | : | 2013-3-1 | Number of pages (incl. cover): 44 |

Re: Confirmation on Company/Corporation Identity

关于：公司身份确认

Dear Sir or Madam,

We, DANDONG HONGXIANG INDUSTRIAL DEVELOPMENT CO., LTD. & FULLY MAX TRADING LIMITED, herewith confirm that we are not owned or controlled or in any way linked to a sanctioned North Korean person/entity as per the attached (page No.2 to 44) lists of entities/persons.

我司，丹东鸿翔实业发展有限公司 及 FULLY MAX TRADING LIMITED公司，特此确认我司不是下述附表（第2页到44页）中的被制裁的朝鲜民主主义人民共和国的公司/人员控制或拥有的公司；

Yours sincerely

For and on behalf of:                                    For and on behalf of:
DANDONG HONGXIANG                                  FULLY MAX TRADING LIMITED
INDUSTRIAL DEVELOPMENT
CO., LTD.
丹东鸿翔实业发展有限公司

[请填入授权人名字]                                      [请填入授权人名字]

[authorized signature and company stamp]     [authorized signature and company stamp]
授权人签字及公司章                                        授权人签字及公司章

Page 1 of 44

Nr

| | | | | Date of listing: 2011-12-20. Controlled by Korea Mining Development Corporation (KOMID) (entity designated by the United Nations, 24.4.2009); primary arms dealer and main exporter of goods and equipment related to ballistic missiles and conventional weapons. Hesong Trading Corporation is involved in supplies with potential use in ballistic missile program. |
|---|---|---|---|---|
| 6850 E | 1355/2011 (OJ L 338) | 2011-12-21 | http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:L:2011:338:0039:0047:EN:PDF PRK | |

| Names | Lname | Fname | Mname | Wname | F/M Title | Function | |
|---|---|---|---|---|---|---|---|
| | | | | Hesong Trading Corporation | | | OJ |
| Address | Nr | Str. | City/Area Pyongyang | Zipcode Country PRK | Other | | |
| Birth | Date | | Place | | | Country | |
| Passport/ID | Number | | | | | | |
| Citizenship | Country | | | | Country | | |

| Entity | Id Nr | Type Leg.basis Reg.date Link | | Programme Remarks | | |
|---|---|---|---|---|---|---|
| | 6851 E | 137/2013 (OJ L 46) 19 | 2013-02-19 | http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:L:2013:046:0019:0024:EN:PDF PRK | Removed from Annex V of Regulation 329/2007 and added to Annex IV of the same regulation on 19.02.2013. Date of designation by the UN: 22.1.2013. |

| Names | Lname | Fname | Mname | Wname | F/M Title | Function | |
|---|---|---|---|---|---|---|---|
| | | | | Tosong Technology Trading Corporation | | | OJ |
| Address | Nr | Str. | City/Area Pyongyang | Zipcode Country PRK | Other | | |
| Birth | Date | | Place | | | Country | |
| Passport/ID | Number | | | | | | |
| Citizenship | Country | | | | Country | | |

| Entity | Id Nr | Type Leg.basis Reg.date Link | | Programme Remarks | | |
|---|---|---|---|---|---|---|
| | 6852 E | 1355/2011 (OJ L 338) | 2011-12-21 | http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:L:2011:338:0039:0047:EN:PDF PRK | Date of listing: 2011-12-20. Controlled by Korea Ryonbong General Corporation (designated by the UNSCR 1718 Sanctions Committee in April 2009): defence conglomerate specialising in acquisition for DPRK defence industries and support to that country's military-related sales |

| Names | Lname | Fname | Mname | Wname | F/M Title | Function | |
|---|---|---|---|---|---|---|---|
| | | | | | | | OJ |

page 23 of 44

| Address | Nr | Str. | City/Area | Zipcode | Country | Other |
|---|---|---|---|---|---|---|
| | | | Korea Complex Equipment Import Corporation | | | |
| | | | Rakwon-dong, Pothonggang District, Pyongyang | | PRK | |

| Birth | Date | | Place | | | |
|---|---|---|---|---|---|---|
| Passport/ID | Number | | | | | Country |
| Citizenship | Country | | | Country | | |

| Entity | Id Nr | Type | Leg.basis | Reg.date | Link | | Programme | Remarks |
|---|---|---|---|---|---|---|---|---|
| | 6853 E | | 1355/2011 (OJ L 338) | 2011-12-21 | http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:L:2011:338:0039:0047:EN:PDF | | PRK | Date of listing: 2011-12-20. Controlled by Korea Ryonbong General Corporation (designated by the UNSCR 1718 Sanctions Committee in April 2009): defence conglomerate specialising in acquisition for DPRK defence industries and support to that country's military-related sales |

| Names | Lname | Fnname | Mname | Wname | F/M | Title | Function | | OJ |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Korea International Chemical Joint Venture Company | | | | | |
| | | | | Choson International Chemicals Joint Operation Company | | | | | |
| | | | | Chosun International Chemicals Joint Operation Company | | | | | |
| | | | | International Chemical Joint Venture Corporation | | | | | |

| Address | Nr | Str. | City/Area | Zipcode | Country | Other |
|---|---|---|---|---|---|---|
| | | | Hamhung, South Hamgyong Province | | PRK | |
| | | | Man gyongdae-kuyok, Pyongyang | | PRK | |
| | | | Mangyungdae-gu, Pyongyang | | PRK | |

| Birth | Date | | Place | | | |
|---|---|---|---|---|---|---|
| Passport/ID | Number | | | | | Country |
| Citizenship | Country | | | Country | | |

| Entity | Id Nr | Type | Leg.basis | Reg.date | Link | | Programme | Remarks |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Date of listing: 2011-12-20. Controlled by Korea Ryonbong General Corporation (entity designated by the United Nations, |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6854 E | 1355/2011 (OJ L 338) | 2011-12-21 | http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:L:2011:338:0039:0047:EN:PDF | PRK | | | 24.4.2009); defence conglomerate specialising in acquisition for DPRK defence industries and support to that country's military-related sales |

| Names | Lname | Fname | Mname | Wname | F/M Title | Function | OJ |
|---|---|---|---|---|---|---|---|
| | | | | Korea Kwangsong Trading Corporation | | | |

| Address | Nr  Str. | | City/Area | Zipcode Country | Other | | |
|---|---|---|---|---|---|---|---|
| | | | Rakwon-dong, Pothonggang District, Pyongyang | PRK | | | |

| Birth | Date | | Place | | | Country | |
|---|---|---|---|---|---|---|---|
| Passport/ID | Number | | | | | | |
| Citizenship | Country | | | | Country | | |

| Entity | Id Nr | Type Leg.basis Reg.date Link | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | Programme Remarks | |

| | | | | | | | Removed from Annex V of Regulation 329/2007 and added to Annex IV of the same regulation on 19.02.2013. Date of designation by the UN: 22.1.2013. |
|---|---|---|---|---|---|---|---|
| 6855 E | 137/2013 (OJ L 46) | 2013-02-19 | http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:L:2013:046:0019:0024:EN:PDF | PRK | | | |

| Names | Lname | Fname | Mname | Wname | F/M Title | Function | OJ |
|---|---|---|---|---|---|---|---|
| | | | | Korea Ryonha Machinery Joint Venture Corporation | | | |
| | | | | CHOSUN YUNHA MACHINERY JOINT OPERATION COMPANY | | | |
| | | | | KOREA RYENHA MACHINERY J/V CORPORATION | | | |
| | | | | RYONHA MACHINERY JOINT VENTURE CORPORATION | | | |

| Address | Nr  Str. | | City/Area | Zipcode Country | Other | | |
|---|---|---|---|---|---|---|---|
| | | | Central District, Pyongyang | PRK | | | |
| | | | Mangungdae-gu, Pyongyang | PRK | | | |
| | | | Mangyongdae District, Pyongyang | PRK | | | |

| Birth | Date | | Place | | | Country | |
|---|---|---|---|---|---|---|---|
| Passport/ID | Number | | | | | | |
| Citizenship | Country | | | | Country | | |

| Entity | Id Nr | Type Leg.basis  Reg.date Link | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | Programme Remarks | |

| | | | | | | | Date of listing 2011-12-20. Responsible for overseeing activities of |
|---|---|---|---|---|---|---|---|

Global

| Entity | Id Nr | Type | Leg.basis | Reg.date | Link | | Programme | Remarks |
|---|---|---|---|---|---|---|---|---|
| | 6856 E | | 1355/2011 (OJ L 338) | 2011-12-21 | http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:L:2011:338:0039:0047:EN:PDF | PRK | | North Korea's military industries, including the Second Economic Committee (SEC) and KOMID. This includes overseeing the development of North Korea's ballistic missile and nuclear programmes. Until recently, Munitions Industry Department was headed by Jon Pyong Ho; information suggests that former Munitions Industry Department (MID) first vice director Chu Kyu-ch'ang (Ju Gyu-chang) is the current director of the MID, which is publicly referred to as the Machine Building Industry Department. Chu served as the overall supervisor for North Korea's missile development, including oversight of the April 5, 2009 Taepo Dong-2 (TD-2) missile launch and the failed July 2006 TD-2 launch. |

| Names | Lname | Fname | Mname | Wname | F/M Title | Function | | OJ |
|---|---|---|---|---|---|---|---|---|
| | | | | Munitions Industry Department | | | | |
| | | | | Military Supplies Industry Department | | | | |

| Address | Nr | Str. | | City/Area | | Zipcode | Country | Other |
|---|---|---|---|---|---|---|---|---|
| | | | | Pyongyang | | | PRK | |

| Birth | Date | | | Place | | | | |
|---|---|---|---|---|---|---|---|---|
| Passport/ID | Number | | | | | | Country | Country |
| Citizenship | Country | | | | | | | |

| Entity | Id Nr | Type | Leg.basis | Reg.date | Link | | Programme | Remarks |
|---|---|---|---|---|---|---|---|---|
| | 6857 E | | 1355/2011 (OJ L 338) | 2011-12-21 | http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:L:2011:338:0039:0047:EN:PDF | PRK | | Date of listing: 2011-12-20. The Reconnaissance General Bureau (RGB) is North Korea's premiere intelligence organization, created in early 2009 by the merger of existing intelligence organizations from the Korean Workers' Party, the Operations Department and Office 35, and the Reconnaissance Bureau of the Korean People's Army. It falls under direct command of the Ministry of Defence |

|  |  |  |  |  |  |  | and is primarily in charge of gathering military intelligence. RGB trades in conventional arms and controls the North Korean conventional arms firm Green Pine Associated Corporation (Green Pine). |
|--|--|--|--|--|--|--|--|

| Names | Lname | Fname | Mname | Wname | F/M Title | Function | OJ |
|-------|-------|-------|-------|-------|-----------|----------|----|
|  |  |  |  | Reconnaissance General Bureau (RGB) |  |  |  |
|  |  |  |  | Chongch'al Ch'ongguk |  |  |  |
|  |  |  |  | RGB |  |  |  |
|  |  |  |  | KPA Unit 586 |  |  |  |

| Address | Nr | Str. |  | City/Area | Zipcode | Country | Other |
|---------|----|----|--|-----------|---------|---------|-------|
|  |  |  |  | Hyongjesan-Guyok, Pyongyang |  | PRK |  |
|  |  |  |  | Nungrado, Pyongyang |  | PRK |  |

| Birth | Date |  | Place |  |  | Country |
|-------|------|--|-------|--|--|---------|
| Passport/ID Number |  |  |  |  | Country |  |
| Citizenship | Country |  |  |  |  |  |

| Entity | Id Nr | Type | Leg.basis | Reg.date | Link | Programme | Remarks |
|--------|-------|------|-----------|----------|------|-----------|---------|
|  | 6859 P |  | 1355/2011 (OJ L 338) | 2011-12-21 | http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:L:2011:338:0039:0047:EN:PDF | PRK | Date of listing: 2011-12-20. |

| Names | Lname | Fname | Mname | Wname | F/M Title | Function | OJ |
|-------|-------|-------|-------|-------|-----------|----------|----|
|  | KIM | Tong-Myo'ng |  |  |  |  |  |
|  | KIM | Chin-so'k |  |  |  |  |  |

| Address | Nr | Str. |  | City/Area | Zipcode | Country | Other |
|---------|----|----|--|-----------|---------|---------|-------|
| Birth | Date |  | Place |  |  | Country |
|  | 1964 |  |  |  |  |  |
| Passport/ID Number |  |  |  |  | Country |  |
| Citizenship | Country |  |  |  |  |  |
|  | PRK |  |  |  |  |  |

| Entity | Id Nr | Type | Leg.basis | Reg.date | Link | Programme | Remarks |
|--------|-------|------|-----------|----------|------|-----------|---------|
|  |  |  |  |  |  |  | Date of listing: 2011-12-20. A subordinate acting on behalf of or at the direction of, owned or controlled by the Korea Ryonbong General Corporation (entity designated by the United Nations, 24.4.2009). Provides financial services in support of both Tanchon Commercial Bank (entity designated by the United Nations, 24.4.2009) and Korea Hyoksin Trading |

Global

| | | | |
|---|---|---|---|
| 6860 E | 1355/2011 (OJ L 338) | 2011-12-21 | http://eur-lex.europa.eu/LexUriSery/LexUriSery.do? PRK uri=OJ:L:2011:338:0039:0047:EN:PDF |

Corporation (entity designated by the United Nations, 16.7.2009); Since 2008, Tanchon Commercial Bank has been utilizing KKBC to facilitate funds transfers likely amounting to millions of dollars, including transfers involving Korea Mining Development Trading Corporation (KOMID) (entity designated by the United Nations, 24.4.2009) related funds from Burma to China in 2009. Additionally, Hyoksin, which the UN described as being involved in the development of weapons of mass destruction, sought to use KKBC in connection with a purchase of dual-use equipment in 2008. KKBC has at least one overseas branch in Dandong, China.

| Names | Lname | Fname | Mname | Wname | F/M | Title | Function | OJ |
|---|---|---|---|---|---|---|---|---|
| | | | | Korea Kwangson Banking Corp. (KKBC) | | | | |
| | | | | Korea Kwangson Banking Corp KKBC | | | | |

| Address | Nr | Str. | City/Area | Zipcode | Country | Other |
|---|---|---|---|---|---|---|
| | | | Jungson-dong, Sungri Street, Central District, Pyongyang | | PRK | |

| Birth | Date | | Place | | | |
|---|---|---|---|---|---|---|
| Passport/ID | Number | | | | Country | Country |
| Citizenship | Country | | | | | |

| Entity | Id Nr | Type | Leg.basis | Reg.date | Link | Programme | Remarks |
|---|---|---|---|---|---|---|---|

Date of listing: 2011-12-20. Office 39 of the Korean Workers' Party engages in illicit economic activity to support the North Korean government. It has branches throughout the nation that raise and manage funds and is responsible for earning foreign currency for

http://ec.europa.eu/external_relations/cfsp/sanctions/list/version4/global/e_ctlview.html   28.02.2013

| | | | | |
|---|---|---|---|---|
| 6861 E | 1355/2011 (OJ L 338) | 2011-12-21 | http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:L:2011:338:0039:0047:EN:PDF | PRK |

North Korea's Korean Workers' Party senior leadership through illicit activities such as narcotics trafficking. Office 39 controls a number of entities inside North Korea and abroad through which it conducts numerous illicit activities including the production, smuggling, and distribution of narcotics. Office 39 has also been involved in the attempted procurement and transfer to North Korea of luxury goods. Office 39 figures among the most important organisations assigned with currency and merchandise acquisition. It controls several trading companies some of which are active in illicit activities, among them Daesong General Bureau, part of Daesong group, the largest company group of the country. Office 39 according to some sources entertains representation office in Rome, Beijing, Bangkok, Singapore, Hongkong and Dubai. To the outside Office 39 changes name and appearance regularly. The director of Office 39, JON Il-chun is already listed on the EU sanction list. Office 39 produced methamphetamine in Sangwon, South Pyongan Province and was also involved in the distribution of methamphetamine to small-scale North Korean smugglers for distribution through China and South Korea. Office 39 also operates poppy farms in North Hamkyo'ng Province and North Pyongan Province and produces opium and heroin in Hamhu'ng and Nachin. In 2009, Office 39 was involved

Global

in the failed attempt to purchase and export to North Korea – through China – two Italian-made luxury yachts worth more than $15 million. Halted by Italian authorities, the attempted export of the yachts destined for Kim Jong- il was in violation of United Nations sanctions against North Korea under UNSCR 1718, which specifically require Member States to prevent the supply, sale, or transfer of luxury goods to North Korea. Office 39 previously used Banco Delta Asia to launder illicit proceeds. Banco Delta Asia was identified by the Treasury Department in September 2005 as a "primary money laundering concern" under Section 311 of the USA PATRIOT Act, because it represented an unacceptable risk of money laundering and other financial crimes.'

OJ

| Names | Lname | Fname | Mname | Wname | F/M | Title | Function |
|-------|-------|-------|-------|-------|-----|-------|----------|
| | | | | Office 39 of The Korean Workers' Party | | | |
| | | | | Office #39 | | | |
| | | | | Office No. 39 | | | |
| | | | | Bureau 39 | | | |
| | | | | Central Committee | | | |
| | | | | Third Floor Division 39. | | | |

| Address | Nr | Str. | City/Area | Zipcode | Country | Other |
|---------|----|----|-----------|---------|---------|-------|
| | | Second KWP Government Building (Korean: Ch'o'ngsa), Chungso'ng, Urban Tower (Korean 'Dong) | Chung Ward, Pyongyang | | PRK | |
| | | Chung-Guyok (Central District), Sosong Street | Kyongrim-Dong, Pyongyang | | PRK | |
| | | Changgwang Street | Pyongyang | | PRK | |

| Birth | Date | | Place | | | |
|-------|------|--|-------|--|--|--|
| Passport/ID Number | | | | | Country | Country |
| Citizenship | Country | | | | | |

http://ec.europa.eu/external_relations/cfsp/sanctions/list/version4/global/e_ctlview.html   28.02.2013

Global

| Entity | Id Nr | Type Leg.basis Reg.date Link | | Programme Remarks |
|---|---|---|---|---|
| | | | | [ Print Record ] [Back to top] |
| | 6862 E | 137/2013 2013-02- (OJ L 46) 19  http://eur-lex.europa.eu/LexUriServ/LexUriServ.do? uri=OJ:L:2013:046:0019:0024:EN:PDF PRK | | Removed from Annex V of Regulation 329/2007 and added to Annex IV of the same regulation. Date of designation by the UN: 2.5.2012 |

| Names | Lname | Fname | Mname | Wname | F/M Title | Function | OJ |
|---|---|---|---|---|---|---|---|
| | | | | Amroggang Development Banking Corporation AMROGGANG DEVELOPMENT BANK AMNOkKANG DEVELOPMENT BANK | | | |

| Address | Nr Str. | | City/Area | Zipcode Country Other |
|---|---|---|---|---|
| | | | Tongan-dong, Pyongyang | PRK |

| Birth | Date | | Place | | Country |
|---|---|---|---|---|---|
| Passport/ID Number | | | | Country | |
| Citizenship Country | | | | | |

| Entity | Id Nr | Type Leg.basis Reg.date Link | | Programme Remarks |
|---|---|---|---|---|
| | | | | [ Print Record ] [Back to top] |
| | 6863 E | 137/2013 2013-02- (OJ L 46) 19  http://eur-lex.europa.eu/LexUriServ/LexUriServ.do? uri=OJ:L:2013:046:0019:0024:EN:PDF PRK | | Removed from Annex V of Regulation 329/2007 and added to Annex IV of the same regulation on 19.02.2013. Date of designation by the UN: 22.1.2013 |

| Names | Lname | Fname | Mname | Wname | F/M Title | Function | OJ |
|---|---|---|---|---|---|---|---|
| | | | | Bank of East Land Dongbang BANK TONGBANG U'NHAENG TONGBANG BANK | | | |

| Address | Nr Str. | | City/Area | Zipcode Country Other |
|---|---|---|---|---|
| | PO Box 32, BEL Building, Jonseung-Dung | | Moranbong District, Pyongyang | PRK |

| Birth | Date | | Place | | Country |
|---|---|---|---|---|---|
| Passport/ID Number | | | | Country | |
| Citizenship Country | | | | | |

| Entity | Id Nr | Type Leg.basis Reg.date Link | | Programme Remarks |
|---|---|---|---|---|
| | 7205 P | 137/2013 2013-02- (OJ L 46) 19  http://eur-lex.europa.eu/LexUriServ/LexUriServ.do? uri=OJ:L:2013:046:0019:0024:EN:PDF PRK | | Date of designation: 22.1.2013. |

| Names | Lname | Fname | Mname | Wname | F/M Title | Function | OJ |
|---|---|---|---|---|---|---|---|
| | Paek | Chang-Ho | | | | Senior official and head of the satellite control center of Korean Committee for Space Technology | |
| | | | | Pak Chang-Ho Paek Ch'ang-Ho | | | |

| Address | Nr Str. | | City/Area | Zipcode Country Other |
|---|---|---|---|---|

page 31 of 44

Global

| Birth | Date | | Place | | | | Country |
|---|---|---|---|---|---|---|---|
| | 1964-06-18 | | Kaesong | | | | PRK |
| Passport/ID Number | | | | | Country | | |
| | 381420754 (Passport issued on 7.12.2011, expiring on 7.12.2016) | | | | | | |
| Citizenship | Country | | | | | | |

| Entity | Id Nr | Type Leg.basis Reg.date Link | | | | | Programme Remarks |
|---|---|---|---|---|---|---|---|
| | 7206 P | 137/2013 2013-02-(OJ L 46) 19 | http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:L:2013:046:0019:0024:EN:PDF | | | PRK | Date of designation: 22.1.2013 |
| Names | Lname | Fname | Mname | Wname | | F/M Title | Function  OJ |
| | Chang | Myong-Chin | | | | | General Manager of the Sohae Satellite Launching Station |
| Address | Nr Str. | | City/Area | Zipcode Country Other | | | |
| Birth | Date | Jang Myong-Jin Place | | | | | Country |
| | 1966 | | | | | | |
| | 1965 | | | | | | |
| Passport/ID Number | | | | | Country | | |
| Citizenship | Country | | | | | | |

| Entity | Id Nr | Type Leg.basis Reg.date Link | | | | | Programme Remarks |
|---|---|---|---|---|---|---|---|
| | 7207 P | 137/2013 2013-02-(OJ L 46) 19 | http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:L:2013:046:0019:0024:EN:PDF | | | PRK | Date of designation: 22.1.2013 |
| Names | Lname | Fname | Mname | Wname | | F/M Title | Function  OJ |
| | Ra | Ky'ong-Su | | | | | Tanchon Commercial Bank (TCB) official |
| Address | Nr Str. | | City/Area | Zipcode Country Other | | | |
| Birth | Date | | Place | | | | |
| Passport/ID Number | | | | | Country | | |
| Citizenship | Country | | | | | | |

| Entity | Id Nr | Type Leg.basis Reg.date Link | | | | | Programme Remarks |
|---|---|---|---|---|---|---|---|
| | 7208 P | 137/2013 2013-02-(OJ L 46) 19 | http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:L:2013:046:0019:0024:EN:PDF | | | PRK | Date of designation: 22.1.2013 |
| Names | Lname | Fname | Mname | Wname | | F/M Title | Function  OJ |
| | Kim | Kwang-il | | | | | Tanchon Commercial Bank (TCB) official |
| Address | Nr Str. | | City/Area | Zipcode Country Other | | | |
| Birth | Date | | Place | | | | |
| Passport/ID Number | | | | | Country | | |
| Citizenship | Country | | | | | | |

| Entity | Id Nr | Type Leg.basis Reg.date Link | | | | | Programme Remarks |
|---|---|---|---|---|---|---|---|
| | 7212 E | 137/2013 2013-02-(OJ L 46) 19 | http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:L:2013:046:0019:0024:EN:PDF | | | PRK | Date of designation: 22.1.2013 |
| Names | Lname | Fname | Mname | Wname | | F/M Title | Function  OJ |
| | | | | Korean Committee for Space Technology | | | |
| | | | | DPRK Committee for Space | | | |

page 32 of 44

Global

Technology
Department of Space
Technology of the
DPRK
Committee for Space
Technology
KCST

| Address | Nr | Str. | | City/Area | Zipcode | Country | Other |
|---|---|---|---|---|---|---|---|
| | | | | Pyongyang | | PRK | |

| Birth | Date | | | Place | | | Country |
|---|---|---|---|---|---|---|---|
| Passport/ID Number | | | | | | Country | |
| Citizenship | Country | | | | | | |

| Entity | Id Nr | Type | Leg.basis | Reg.date | Link | | Programme | Remarks |
|---|---|---|---|---|---|---|---|---|
| | 7214 E | 137/2013 (OJ L 46) 19 | 2013-02- | | http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:L:2013:046:0019:0024:EN:PDF | PRK | | Date of designation: 22.1.2013 |

| Names | Lname | Fname | Mname | Wname | F/M | Title | Function | | OJ |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Korea Kumryong Trading Corporation | | | | | |

| Address | Nr | Str. | | City/Area | Zipcode | Country | Other |
|---|---|---|---|---|---|---|---|

| Birth | Date | | | Place | | | Country |
|---|---|---|---|---|---|---|---|
| Passport/ID Number | | | | | | Country | |
| Citizenship | Country | | | | | | |

| Entity | Id Nr | Type | Leg.basis | Reg.date | Link | | Programme | Remarks |
|---|---|---|---|---|---|---|---|---|
| | 7217 E | 137/2013 (OJ L 46) 19 | 2013-02- | | http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:L:2013:046:0019:0024:EN:PDF | PRK | | Date of designation: 22.1.2013 |

| Names | Lname | Fname | Mname | Wname | F/M | Title | Function | | OJ |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Leader (Hong Kong) International | | | | | |
| | | | | Leader International Trading Limited | | | | | |

| Address | Nr | Str. | | City/Area | Zipcode | Country | Other |
|---|---|---|---|---|---|---|---|
| | 173 | Des Voeux Road, Room 1610 Nan Fung Tower | | Hong Kong | | | |

| Birth | Date | | | Place | | | Country |
|---|---|---|---|---|---|---|---|
| Passport/ID Number | | | | | | Country | |
| Citizenship | Country | | | | | | |

http://www.treasury.gov/ofac/downloads/ctrylst.txt

Korea, North

2ND ACADEMY OF NATURAL SCIENCES (a.k.a. ACADEMY OF NATURAL SCIENCES; a.k.a. CHAYON KWAHAK-WON; a.k.a. CHE 2 CHAYON KWAHAK-WON; a.k.a. KUKPANG KWAHAK-WON; a.k.a. NATIONAL DEFENSE ACADEMY; a.k.a. SANSRI; a.k.a. SECOND ACADEMY OF NATURAL SCIENCES; a.k.a. SECOND ACADEMY OF NATURAL SCIENCES RESEARCH INSTITUTE), Pyongyang, Korea, North [NPWMD].

ACADEMY OF NATURAL SCIENCES (a.k.a. 2ND ACADEMY OF NATURAL SCIENCES; a.k.a. CHAYON KWAHAK-WON; a.k.a. CHE 2 CHAYON KWAHAK-WON; a.k.a. KUKPANG KWAHAK-WON; a.k.a. NATIONAL DEFENSE ACADEMY; a.k.a. SANSRI; a.k.a. SECOND ACADEMY OF NATURAL SCIENCES; a.k.a. SECOND ACADEMY OF NATURAL SCIENCES RESEARCH INSTITUTE), Pyongyang, Korea, North [NPWMD].

AMNOKKANG DEVELOPMENT BANK (a.k.a. AMROGGANG DEVELOPMENT BANK), Tongan-dong, Pyongyang, Korea, North [NPWMD].

AMROGGANG DEVELOPMENT BANK (a.k.a. AMNOKKANG DEVELOPMENT BANK), Tongan-dong, Pyongyang, Korea, North [NPWMD].

BANK OF EAST LAND (a.k.a. DONGBANG BANK; a.k.a. TONGBANG BANK; a.k.a. TONGBANG U'NHAENG), PO Box 32, BEL Building, Jonseung-Dong, Moranbong District, Pyongyang, Korea, North; SWIFT/BIC BOEL KP PY [DPRK].

BUREAU 39 (a.k.a. CENTRAL COMMITTEE BUREAU 39; a.k.a. DIVISION 39; a.k.a. OFFICE #39; a.k.a. OFFICE 39; a.k.a. OFFICE NO. 39; a.k.a. "THIRD FLOOR"), Second KWP Government Building (Korean - Ch'o'ngsa), Chungso'ng, Urban Town (Korean - Dong), Chung Ward, Pyongyang, Korea, North; Chung-Guyok (Central District), Sosong Street, Kyongrim-Dong, Pyongyang, Korea, North; Changgwang Street, Pyongyang, Korea, North [DPRK].

CENTRAL COMMITTEE BUREAU 39 (a.k.a. BUREAU 39; a.k.a. DIVISION 39; a.k.a. OFFICE #39; a.k.a. OFFICE 39; a.k.a. OFFICE NO. 39; a.k.a. "THIRD FLOOR"), Second KWP Government Building (Korean - Ch'o'ngsa), Chungso'ng, Urban Town (Korean - Dong), Chung Ward, Pyongyang, Korea, North; Chung-Guyok (Central District), Sosong Street, Kyongrim-Dong, Pyongyang, Korea, North; Changgwang Street, Pyongyang, Korea, North [DPRK].

CHANGGWANG CREDIT BANK (f.k.a. KOREA CHANGGWANG CREDIT BANK; a.k.a. TANCHON COMMERCIAL BANK), Saemul 1-Dong Pyongchon District, Pyongyang, Korea, North [NPWMD].

CHANGGWANG SINYONG CORPORATION (a.k.a. EXTERNAL TECHNOLOGY GENERAL CORPORATION; a.k.a. KOREA KUMRYONG TRADING COMPANY; a.k.a. KOREA MINING DEVELOPMENT TRADING CORPORATION; a.k.a. NORTH KOREAN MINING DEVELOPMENT TRADING CORPORATION; a.k.a. "KOMID"), Central District, Pyongyang, Korea, North [NPWMD].

CHAYON KWAHAK-WON (a.k.a. 2ND ACADEMY OF NATURAL SCIENCES; a.k.a. ACADEMY OF

page 34 of 44

http://www.treasury.gov/ofac/downloads/ctrylst.txt

NATURAL SCIENCES; a.k.a. CHE 2 CHAYON KWAHAK-WON; a.k.a. KUKPANG KWAHAK-WON; a.k.a. NATIONAL DEFENSE ACADEMY; a.k.a. SANSRI; a.k.a. SECOND ACADEMY OF NATURAL SCIENCES; a.k.a. SECOND ACADEMY OF NATURAL SCIENCES RESEARCH INSTITUTE), Pyongyang, Korea, North [NPWMD].

CHE 2 CHAYON KWAHAK-WON (a.k.a. 2ND ACADEMY OF NATURAL SCIENCES; a.k.a. ACADEMY OF NATURAL SCIENCES; a.k.a. CHAYON KWAHAK-WON; a.k.a. KUKPANG KWAHAK-WON; a.k.a. NATIONAL DEFENSE ACADEMY; a.k.a. SANSRI; a.k.a. SECOND ACADEMY OF NATURAL SCIENCES; a.k.a. SECOND ACADEMY OF NATURAL SCIENCES RESEARCH INSTITUTE), Pyongyang, Korea, North [NPWMD].

CHONGCH'AL CH'ONGGUK (a.k.a. KPA UNIT 586; a.k.a. RECONNAISSANCE GENERAL BUREAU; a.k.a. "RGB"), Hyongjesan-Guyok, Pyongyang, Korea, North; Nungrado, Pyongyang, Korea, North [DPRK].

CHO'NGSONG UNITED TRADING COMPANY (a.k.a. CHONGSONG YONHAP; a.k.a. CH'O'NGSONG YO'NHAP; a.k.a. CHOSUN CHAWO'N KAEBAL T'UJA HOESA; a.k.a. GREEN PINE ASSOCIATED CORPORATION; a.k.a. JINDALLAE; a.k.a. KU'MHAERYONG COMPANY LTD; a.k.a. NATURAL RESOURCES DEVELOPMENT AND INVESTMENT CORPORATION; a.k.a. SAEINGP'IL COMPANY), c/o Reconnaissance General Bureau Headquarters, Hyongjesan-Guyok, Pyongyang, Korea, North; Nungrado, Pyongyang, Korea, North [DPRK].

CHONGSONG YONHAP (a.k.a. CHO'NGSONG UNITED TRADING COMPANY; a.k.a. CH'O'NGSONG YO'NHAP; a.k.a. CHOSUN CHAWO'N KAEBAL T'UJA HOESA; a.k.a. GREEN PINE ASSOCIATED CORPORATION; a.k.a. JINDALLAE; a.k.a. KU'MHAERYONG COMPANY LTD; a.k.a. NATURAL RESOURCES DEVELOPMENT AND INVESTMENT CORPORATION; a.k.a. SAEINGP'IL COMPANY), c/o Reconnaissance General Bureau Headquarters, Hyongjesan-Guyok, Pyongyang, Korea, North; Nungrado, Pyongyang, Korea, North [DPRK].

CH'O'NGSONG YO'NHAP (a.k.a. CHO'NGSONG UNITED TRADING COMPANY; a.k.a. CHONGSONG YONHAP; a.k.a. CHOSUN CHAWO'N KAEBAL T'UJA HOESA; a.k.a. GREEN PINE ASSOCIATED CORPORATION; a.k.a. JINDALLAE; a.k.a. KU'MHAERYONG COMPANY LTD; a.k.a. NATURAL RESOURCES DEVELOPMENT AND INVESTMENT CORPORATION; a.k.a. SAEINGP'IL COMPANY), c/o Reconnaissance General Bureau Headquarters, Hyongjesan-Guyok, Pyongyang, Korea, North; Nungrado, Pyongyang, Korea, North [DPRK].

CHOSON INTERNATIONAL CHEMICALS JOINT OPERATION COMPANY (a.k.a. CHOSUN INTERNATIONAL CHEMICALS JOINT OPERATION COMPANY; a.k.a. INTERNATIONAL CHEMICAL JOINT VENTURE CORPORATION; a.k.a. KOREA INTERNATIONAL CHEMICAL JOINT VENTURE COMPANY), Hamhung, South Hamgyong Province, Korea, North; Man gyongdae-kuyok, Pyongyang, Korea, North; Mangyungdae-gu, Pyongyang, Korea, North [NPWMD].

CHOSON TAESONG UNHAENG (a.k.a. KOREA DAESONG BANK; a.k.a. TAESONG BANK), Segori-dong, Gyongheung St., Potonggang District, Pyongyang, Korea, North; SWIFT/BIC KDBK KP PY; PHONE 850 2 381 8221; PHONE 850 2 18111 ext. 8221; FAX 850 2 381 4576; TELEX 360230 and 37041 KDP KP; TGMS daesongbank; EMAIL kdb@co.chesin.com [DPRK].

CHOSUN CHAWO'N KAEBAL T'UJA HOESA (a.k.a. CHO'NGSONG UNITED TRADING COMPANY;

page 35 of 44

http://www.treasury.gov/ofac/downloads/ctrylst.txt

a.k.a. CHONGSONG YONHAP; a.k.a. CH'O'NGSONG YO'NHAP; a.k.a. GREEN PINE
ASSOCIATED CORPORATION; a.k.a. JINDALLAE; a.k.a. KU'MHAERYONG COMPANY LTD;
a.k.a. NATURAL RESOURCES DEVELOPMENT AND INVESTMENT CORPORATION; a.k.a.
SAEINGP'IL COMPANY), c/o Reconnaissance General Bureau Headquarters, Hyongjesan-
Guyok, Pyongyang, Korea, North; Nungrado, Pyongyang, Korea, North [DPRK].

CHOSON INTERNATIONAL CHEMICALS JOINT OPERATION COMPANY (a.k.a. CHOSON
INTERNATIONAL CHEMICALS JOINT OPERATION COMPANY; a.k.a. INTERNATIONAL CHEMICAL
JOINT VENTURE CORPORATION; a.k.a. KOREA INTERNATIONAL CHEMICAL JOINT VENTURE
COMPANY), Hamhung, South Hamgyong Province, Korea, North; Man gyongdae-kuyok,
Pyongyang, Korea, North; Mangyungdae-gu, Pyongyang, Korea, North [NPWMD].

CHOSUN YUNHA MACHINERY JOINT OPERATION COMPANY (a.k.a. KOREA RYENHA MACHINERY
J/V CORPORATION; a.k.a. KOREA RYONHA MACHINERY JOINT VENTURE CORPORATION; a.k.a.
RYONHA MACHINERY JOINT VENTURE CORPORATION), Mangungdae-gu, Pyongyang, Korea,
North; Mangyongdae District, Pyongyang, Korea, North; Central District,
Pyongyang, Korea, North [NPWMD].

COMMITTEE FOR SPACE TECHNOLOGY (a.k.a. DEPARTMENT OF SPACE TECHNOLOGY OF NORTH
KOREA; a.k.a. DPRK COMMITTEE FOR SPACE TECHNOLOGY; a.k.a. KCST; a.k.a. KOREAN
COMMITTEE FOR SPACE TECHNOLOGY), Pyongyang, Korea, North [NPWMD].

CUBAN FREIGHT ENTERPRISE (a.k.a. CUFLET; a.k.a. LA EMPRESA CUBANA DE FLETES),
Pyongyang, Korea, North; Moscow, Russia; Barcelona, Spain; Rostock, Germany;
Genoa, Italy; Syczecin, Poland; Rotterdam, Netherlands; Mexico; Buenos Aires,
Argentina; Montreal, Canada; Varna, Bulgaria [CUBA].

CUFLET (a.k.a. CUBAN FREIGHT ENTERPRISE; a.k.a. LA EMPRESA CUBANA DE FLETES),
Pyongyang, Korea, North; Moscow, Russia; Barcelona, Spain; Rostock, Germany;
Genoa, Italy; Syczecin, Poland; Rotterdam, Netherlands; Mexico; Buenos Aires,
Argentina; Montreal, Canada; Varna, Bulgaria [CUBA].

DAESONG TRADING (a.k.a. DAESONG TRADING COMPANY; a.k.a. KOREA DAESONG GENERAL
TRADING CORPORATION; a.k.a. KOREA DAESONG TRADING COMPANY; a.k.a. KOREA DAESONG
TRADING CORPORATION), Pulgan Gori Dong 1, Potonggang District, Pyongyang City,
Korea, North; PHONE 850 2 18111 8204/8208; PHONE 850 2 381 8208/4188; FAX 850 2
381 4431/443 ; EMAIL daesong@co.chesin.com [DPRK].

DAESONG TRADING COMPANY (a.k.a. DAESONG TRADING; a.k.a. KOREA DAESONG GENERAL
TRADING CORPORATION; a.k.a. KOREA DAESONG TRADING COMPANY; a.k.a. KOREA DAESONG
TRADING CORPORATION), Pulgan Gori Dong 1, Potonggang District, Pyongyang City,
Korea, North; PHONE 850 2 18111 8204/8208; PHONE 850 2 381 8208/4188; FAX 850 2
381 4431/443 ; EMAIL daesong@co.chesin.com [DPRK].

DEPARTMENT OF SPACE TECHNOLOGY OF NORTH KOREA (a.k.a. COMMITTEE FOR SPACE
TECHNOLOGY; a.k.a. DPRK COMMITTEE FOR SPACE TECHNOLOGY; a.k.a. KCST; a.k.a.
KOREAN COMMITTEE FOR SPACE TECHNOLOGY), Pyongyang, Korea, North [NPWMD].

DIVISION 39 (a.k.a. BUREAU 39; a.k.a. CENTRAL COMMITTEE BUREAU 39; a.k.a. OFFICE

page 36 of 44

#39; a.k.a. OFFICE 39; a.k.a. OFFICE NO. 39; a.k.a. "THIRD FLOOR"), Second KWP
Government Building (Korean – Ch'o'ngsa), Chungso'ng, Urban Town (Korean –
Dong), Chung Ward, Pyongyang, Korea, North; Chung-Guyok (Central District),
Sosong Street, Kyongrim-Dong, Pyongyang, Korea, North; Changgwang Street,
Pyongyang, Korea, North [DPRK].

DONGBANG BANK (a.k.a. BANK OF EAST LAND; a.k.a. TONGBANG BANK; a.k.a. TONGBANG
U'NHAENG), PO Box 32, BEL Building, Jonseung-Dong, Moranbong District,
Pyongyang, Korea, North; SWIFT/BIC BOEL KP PY [DPRK].

DPRK COMMITTEE FOR SPACE TECHNOLOGY (a.k.a. COMMITTEE FOR SPACE TECHNOLOGY;
a.k.a. DEPARTMENT OF SPACE TECHNOLOGY OF NORTH KOREA; a.k.a. KCST; a.k.a. KOREAN
COMMITTEE FOR SPACE TECHNOLOGY), Pyongyang, Korea, North [NPWMD].

EXTERNAL TECHNOLOGY GENERAL CORPORATION (a.k.a. CHANGGWANG SINYONG CORPORATION;
a.k.a. KOREA HYMRYONG TRADING COMPANY; a.k.a. KOREA MINING DEVELOPMENT TRADING
CORPORATION; a.k.a. NORTH KOREAN MINING DEVELOPMENT TRADING CORPORATION; a.k.a.
"KOMID"), Central District, Pyongyang, Korea, North [NPWMD].

GBAE (a.k.a. GENERAL BUREAU OF ATOMIC ENERGY; a.k.a. GENERAL DEPARTMENT OF
ATOMIC ENERGY), Haeudong, Pyongchen District, Pyongyang, Korea, North [NPWMD].

GENERAL BUREAU OF ATOMIC ENERGY (a.k.a. GBAE; a.k.a. GENERAL DEPARTMENT OF
ATOMIC ENERGY), Haeudong, Pyongchen District, Pyongyang, Korea, North [NPWMD].

GENERAL DEPARTMENT OF ATOMIC ENERGY (a.k.a. GBAE; a.k.a. GENERAL BUREAU OF
ATOMIC ENERGY), Haeudong, Pyongchen District, Pyongyang, Korea, North [NPWMD].

GREEN PINE ASSOCIATED CORPORATION (a.k.a. CHO'NGSONG UNITED TRADING COMPANY;
a.k.a. CHONGSONG YONHAP; a.k.a. CH'O'NGSONG YO'NHAP; a.k.a. CHOSUN CHAWO'N
KAEBAL T'UJA HOESA; a.k.a. JINDALLAE; a.k.a. KU'MHAERYONG COMPANY LTD; a.k.a.
NATURAL RESOURCES DEVELOPMENT AND INVESTMENT CORPORATION; a.k.a. SAEINGP'IL
COMPANY), c/o Reconnaissance General Bureau Headquarters, Hyongjesan-Guyok,
Pyongyang, Korea, North; Nungrado, Pyongyang, Korea, North [DPRK].

HESONG TRADING CORPORATION, Pyongyang, Korea, North [NPWMD].

HUNJIN TRADING CO. (a.k.a. KOREA HEUNGJIN TRADING COMPANY), Pyongyang, Korea,
North [NPWMD].

INTERNATIONAL CHEMICAL JOINT VENTURE CORPORATION (a.k.a. CHOSON INTERNATIONAL
CHEMICALS JOINT OPERATION COMPANY; a.k.a. CHOSUN INTERNATIONAL CHEMICALS JOINT
OPERATION COMPANY; a.k.a. KOREA INTERNATIONAL CHEMICAL JOINT VENTURE COMPANY),
Hamhung, South Hamgyong Province, Korea, North; Man gyongdae-kuyok, Pyongyang,
Korea, North; Mangyungdae-gu, Pyongyang, Korea, North [NPWMD].

JINDALLAE (a.k.a. CHO'NGSONG UNITED TRADING COMPANY; a.k.a. CHONGSONG YONHAP;
a.k.a. CH'O'NGSONG YO'NHAP; a.k.a. CHOSUN CHAWO'N KAEBAL T'UJA HOESA; a.k.a.
GREEN PINE ASSOCIATED CORPORATION; a.k.a. KU'MHAERYONG COMPANY LTD; a.k.a.

page 37 of 44

http://www.treasury.gov/ofac/downloads/ctrylist.txt

NATURAL RESOURCES DEVELOPMENT AND INVESTMENT CORPORATION; a.k.a. SAEINGP'IL COMPANY), c/o Reconnaissance General Bureau Headquarters, Hyongjesan-Guyok, Pyongyang, Korea, North; Nungrado, Pyongyang, Korea, North [DPRK].

KCST (a.k.a. COMMITTEE FOR SPACE TECHNOLOGY; a.k.a. DEPARTMENT OF SPACE TECHNOLOGY OF NORTH KOREA; a.k.a. DPRK COMMITTEE FOR SPACE TECHNOLOGY; a.k.a. KOREAN COMMITTEE FOR SPACE TECHNOLOGY), Pyongyang, Korea, North [NPWMD].

KIM, CHIN-SO'K (a.k.a. KIM, TONG MYONG; a.k.a. KIM, TONG-MYO'NG; a.k.a. "KIM, JIN SOK"), c/o Tanchon Commercial Bank, Saemul 1-Dong Pyongchon District, Pyongyang, Korea, North; DOB 1964; nationality Korea, North (individual) [NPWMD].

KIM, TONG MYONG (a.k.a. KIM, CHIN-SO'K; a.k.a. KIM, TONG-MYO'NG; a.k.a. "KIM, JIN SOK"), c/o Tanchon Commercial Bank, Saemul 1-Dong Pyongchon District, Pyongyang, Korea, North; DOB 1964; nationality Korea, North (individual) [NPWMD].

KIM, TONG-MYO'NG (a.k.a. KIM, CHIN-SO'K; a.k.a. KIM, TONG MYONG; a.k.a. "KIM, JIN SOK"), c/o Tanchon Commercial Bank, Saemul 1-Dong Pyongchon District, Pyongyang, Korea, North; DOB 1964; nationality Korea, North (individual) [NPWMD].

KKBC (a.k.a. KOREA KWANGSON BANKING CORP), Jungson-dong, Sungri Street, Central District, Pyongyang, Korea, North [NPWMD].

KOREA CHANGGWANG CREDIT BANK (f.k.a. CHANGGWANG CREDIT BANK; a.k.a. TANCHON COMMERCIAL BANK), Saemul 1-Dong Pyongchon District, Pyongyang, Korea, North [NPWMD].

KOREA COMPLEX EQUIPMENT IMPORT CORPORATION, Rakwon-dong, Pothonggang District, Pyongyang, Korea, North [NPWMD].

KOREA DAESONG BANK (a.k.a. CHOSON TAESONG UNHAENG; a.k.a. TAESONG BANK), Segori-dong, Gyongheung St., Potonggang District, Pyongyang, Korea, North; SWIFT/BIC KDBK KP KY; PHONE 850 2 381 8221; PHONE 850 2 18111 ext. 8221; FAX 850 2 381 4576; TELEX 360230 and 37041 KDP KP; TGMS daesongbank; EMAIL kdb@co.chesin.com [DPRK].

KOREA DAESONG GENERAL TRADING CORPORATION (a.k.a. DAESONG TRADING; a.k.a. DAESONG TRADING COMPANY; a.k.a. KOREA DAESONG TRADING COMPANY; a.k.a. KOREA DAESONG TRADING CORPORATION), Pulgan Gori Dong 1, Potonggang District, Pyongyang City, Korea, North; PHONE 850 2 18111 8204/8208; PHONE 850 2 381 8208/4188; FAX 850 2 381 4431/4432; EMAIL daesong@co.chesin.com [DPRK].

KOREA DAESONG TRADING COMPANY (a.k.a. DAESONG TRADING; a.k.a. DAESONG TRADING COMPANY; a.k.a. KOREA DAESONG GENERAL TRADING CORPORATION; a.k.a. KOREA DAESONG TRADING CORPORATION), Pulgan Gori Dong 1, Potonggang District, Pyongyang City, Korea, North; PHONE 850 2 18111 8204/8208; PHONE 850 2 381 8208/4188; FAX 850 2

page 38 of 44

http://www.treasury.g.../doc/downloads/ctrylst.txt

381 4431/44... ; EMAIL daesong@co.chesin.com [DPRK].

KOREA DAESON TRADING CORPORATION (a.k.a. DAESONG TRADING; a.k.a. DAESONG
TRADING COMPANY; a.k.a. KOREA DAESONG GENERAL TRADING CORPORATION; a.k.a. KOREA
DAESONG TRADING COMPANY), Pulgan Gori Dong 1, Potonggang District, Pyongyang
City, Korea, North; PHONE 850 2 18111 8204/8208; PHONE 850 2 381 8208/4188; FAX
850 2 381 44../4432; EMAIL daesong@co.chesin.com [DPRK].

KOREA HEUNG... TRADING COMPANY (a.k.a. HUNJIN TRADING CO.), Pyongyang, Korea,
North [NPWMD].

KOREA HYOKS... EXPORT AND IMPORT CORPORATION (a.k.a. KOREA HYOKSIN TRADING
CORPORATION , Rakwon-dong, Pothonggang District, Pyongyang, Korea, North
[NPWMD].

KOREA HYOKS... TRADING CORPORATION (a.k.a. KOREA HYOKSIN EXPORT AND IMPORT
CORPORATION , Rakwon-dong, Pothonggang District, Pyongyang, Korea, North
[NPWMD].

KOREA INTER... TIONAL CHEMICAL JOINT VENTURE COMPANY (a.k.a. CHOSON INTERNATIONAL
CHEMICALS J... T OPERATION COMPANY; a.k.a. CHOSUN INTERNATIONAL CHEMICALS JOINT
OPERATION C... ANY; a.k.a. INTERNATIONAL CHEMICAL JOINT VENTURE CORPORATION;,
Hamhung, S... Hamgyong Province, Korea, North; Man gyongdae-kuyok, Pyongyang,
Korea, North; Mangyungdae-gu, Pyongyang, Korea, North [NPWMD].

KOREA KUMRY... TRADING COMPANY (a.k.a. CHANGGWANG SINYONG CORPORATION; a.k.a.
EXTERNAL TE... OLOGY GENERAL CORPORATION; a.k.a. KOREA MINING DEVELOPMENT TRADING
CORPORATION; .k.a. NORTH KOREAN MINING DEVELOPMENT TRADING CORPORATION; a.k.a.
"KOMID"), C... al District, Pyongyang, Korea, North [NPWMD].

KOREA KWAN... BANKING CORP (a.k.a. KKBC), Jungson-dong, Sungri Street, Central
District, ... yang, Korea, North [NPWMD].

KOREA KWAN... TRADING CORPORATION, Rakwon-dong, Pothonggang District,
Pyongyang, ... a, North [NPWMD].

KOREA MININ... EVELOPMENT TRADING CORPORATION (a.k.a. CHANGGWANG SINYONG
CORPORATION; ..k.a. EXTERNAL TECHNOLOGY GENERAL CORPORATION; a.k.a. KOREA
KUMRYONG TRA... HG COMPANY; a.k.a. NORTH KOREAN MINING DEVELOPMENT TRADING
CORPORATION; .k.a. "KOMID"), Central District, Pyongyang, Korea, North [NPWMD].

KOREA PUGAN... TRADING CORPORATION, Rakwon-dong, Pothonggang District, Pyongyang,
Korea, No... [NPWMD].

KOREA RYED... G TRADING CORPORATION (a.k.a. KOREA RYONGWANG TRADING
CORPORATION , Rakwon-dong, Pothonggang District, Pyongyang, Korea, North
[NPWMD].

KOREA RYEN... MACHINERY J/V CORPORATION (a.k.a. CHOSUN YUNHA MACHINERY JOINT

OPERATION COMPANY; a.k.a. KOREA RYONHA MACHINERY JOINT VENTURE CORPORATION; a.k.a. RYONHA MACHINERY JOINT VENTURE CORPORATION), Mangungdae-gu, Pyongyang, Korea, North; Mangyongdae District, Pyongyang, Korea, North; Central District, Pyongyang, Korea, North [NPWMD].

KOREA RYONBONG GENERAL CORPORATION (a.k.a. KOREA YONBONG GENERAL CORPORATION; f.k.a. LYON GAN GENERAL TRADING CORPORATION), Pot'onggang District, Pyongyang, Korea, North; Rakwon-dong, Pothonggang District, Pyongyang, Korea, North [NPWMD].

KOREA RYENGWANG TRADING CORPORATION (a.k.a. KOREA RYENGWANG TRADING CORPORATION; Rakwon-dong, Pothonggang District, Pyongyang, Korea, North [NPWMD].

KOREA RYONHA MACHINERY JOINT VENTURE CORPORATION (a.k.a. CHOSUN YUNHA MACHINERY JOINT OPERATION COMPANY; a.k.a. KOREA RYENHA MACHINERY J/V CORPORATION; a.k.a. RYONHA MACHINERY JOINT VENTURE CORPORATION), Mangungdae-gu, Pyongyang, Korea, North; Mangyongdae District, Pyongyang, Korea, North; Central District, Pyongyang, Korea, North [NPWMD].

KOREA TAESONG TRADING COMPANY, Pyongyang, Korea, North [NPWMD].

KOREA TAESONG TRADING CORPORATION, Pyongyang, Korea, North [NPWMD].

KOREA YONBONG GENERAL CORPORATION (a.k.a. KOREA RYONBONG GENERAL CORPORATION; f.k.a. LYONSAN GENERAL TRADING CORPORATION), Pot'onggang District, Pyongyang, Korea, North; Rakwon-dong, Pothonggang District, Pyongyang, Korea, North [NPWMD].

KOREAN COMMITTEE FOR SPACE TECHNOLOGY (a.k.a. COMMITTEE FOR SPACE TECHNOLOGY; a.k.a. DEPARTMENT OF SPACE TECHNOLOGY OF NORTH KOREA; a.k.a. DPRK COMMITTEE FOR SPACE TECHNOLOGY; a.k.a. KCST), Pyongyang, Korea, North [NPWMD].

KPA UNIT 586 (a.k.a. CHONGCH'AL CH'ONGGUK; a.k.a. RECONNAISSANCE GENERAL BUREAU; a.k.a. "RGB"), Hyongjesan-Guyok, Pyongyang, Korea, North; Nungrado, Pyongyang, Korea, North [DPRK].

KUKPANG KWAHAK-WON (a.k.a. 2ND ACADEMY OF NATURAL SCIENCES; a.k.a. ACADEMY OF NATURAL SCIENCES; a.k.a. CHAYON KWAHAK-WON; a.k.a. CHE 2 CHAYON KWAHAK-WON; a.k.a. NATIONAL DEFENSE ACADEMY; a.k.a. SANSRI; a.k.a. SECOND ACADEMY OF NATURAL SCIENCES; a.k.a. SECOND ACADEMY OF NATURAL SCIENCES RESEARCH INSTITUTE), Pyongyang, Korea, North [NPWMD].

KU'MBANG CHONGSONG COMPANY LTD (a.k.a. CHO'NGSONG UNITED TRADING COMPANY; a.k.a. CHONGSONG YO'NHAP; a.k.a. CH'O'NGSONG YO'NHAP; a.k.a. CHOSUN CHAWO'N KAEBAL T'UJA HOESA; a.k.a. GREEN PINE ASSOCIATED CORPORATION; a.k.a. JINDALLAE; a.k.a. NATURAL RESOURCES DEVELOPMENT AND INVESTMENT CORPORATION; a.k.a. SAEINGP'IL COMPANY), Reconnaissance General Bureau Headquarters, Hyongjesan-Guyok, Pyongyang, Korea, North; Nungrado, Pyongyang, Korea, North [DPRK].

page 40 of 44

http://www.tre... ...fac/downloads/ctrylst.txt

LA EMPRE... ...ANA DE FLETES (a.k.a. CUBAN FREIGHT ENTERPRISE; a.k.a. CUFLET),
Pyongyan... ...rea, North; Moscow, Russia; Barcelona, Spain; Rostock, Germany;
Genoa, I... ...Syczecin, Poland; Rotterdam, Netherlands; Mexico; Buenos Aires,
Argentin... ...treal, Canada; Varna, Bulgaria [CUBA].

LYONGAK... ...ERAL TRADING CORPORATION (a.k.a. KOREA RYONBONG GENERAL
CORPORAT... ...k.a. KOREA YONBONG GENERAL CORPORATION), Pot'onggang District,
Pyongya... ...on, North; Rakwon-dong, Pothonggang District, Pyongyang, Korea,
North [...

MILITAR... ...LIES INDUSTRY DEPARTMENT (a.k.a. MUNITIONS INDUSTRY DEPARTMENT),
Pyongya... ...rea, North [NPWMD].

MUNITIO... ...USTRY DEPARTMENT (a.k.a. MILITARY SUPPLIES INDUSTRY DEPARTMENT),
Pyongya... ...ea, North [NPWMD].

NAM CHO... ...CORPORATION (a.k.a. NAMCHONGANG TRADING; a.k.a. NAMCHONGANG
TRADING ...ATION; a.k.a. NCG; a.k.a. NOMCHONGANG TRADING CO.), Pyongyang,
Korea, ... ...NPWMD].

NAMCHON... ...ADING (a.k.a. NAM CHON GANG CORPORATION; a.k.a. NAMCHONGANG
TRADING ...ATION; a.k.a. NCG; a.k.a. NOMCHONGANG TRADING CO.), Pyongyang,
Korea, ... ...[NPWMD].

NAMCHON... ...ADING CORPORATION (a.k.a. NAM CHON GANG CORPORATION; a.k.a.
NAMCHON... ...ADING; a.k.a. NCG; a.k.a. NOMCHONGANG TRADING CO.), Pyongyang,
Korea, ... ...[NPWMD].

NATIONA... ...CE ACADEMY (a.k.a. 2ND ACADEMY OF NATURAL SCIENCES; a.k.a. ACADEMY
OF NATU... ...ENCES; a.k.a. CHAYON KWAHAK-WON; a.k.a. CHE 2 CHAYON KWAHAK-WON;
a.k.a. ... ...KWAHAK-WON; a.k.a. SANSRI; a.k.a. SECOND ACADEMY OF NATURAL
SCIENCE ... ...a. SECOND ACADEMY OF NATURAL SCIENCES RESEARCH INSTITUTE),
Pyongya... ...ea, North [NPWMD].

NATURAL ...ES DEVELOPMENT AND INVESTMENT CORPORATION (a.k.a. CHO'NGSONG
UNITED ... ...COMPANY; a.k.a. CHONGSONG YONHAP; a.k.a. CH'O'NGSONG YO'NHAP;
a.k.a. ... ...CHAWO'N KAEBAL T'UJA HOESA; a.k.a. GREEN PINE ASSOCIATED
CORPOR/ ...k.a. JINDALLAE; a.k.a. KU'MHAERYONG COMPANY LTD; a.k.a.
SAEINGN... ...PANY), c/o Reconnaissance General Bureau Headquarters, Hyongjesan-
Guyok, ...ng, Korea, North; Nungrado, Pyongyang, Korea, North [DPRK].

NCG (a. ...N CHON GANG CORPORATION; a.k.a. NAMCHONGANG TRADING; a.k.a.
NAMCHON... ...ADING CORPORATION; a.k.a. NOMCHONGANG TRADING CO.), Pyongyang,
Korea, ... ...[NPWMD].

NOMCHON... ...ADING CO. (a.k.a. NAM CHON GANG CORPORATION; a.k.a. NAMCHONGANG
TRADING ... ...NAMCHONGANG TRADING CORPORATION; a.k.a. NCG), Pyongyang, Korea,
North ...

http://www... ...tac/downloads/ctrylst.txt

http://www.          loc/downloads/ctrlyst.txt

NORTH          NING DEVELOPMENT TRADING CORPORATION (a.k.a. CHANGGWANG SINYONG
CORPORA        .k.a. EXTERNAL TECHNOLOGY GENERAL CORPORATION; a.k.a. KOREA
KUMRYOI        NG COMPANY; a.k.a. KOREA MINING DEVELOPMENT TRADING CORPORATION;
a.k.a.         ', Central District, Pyongyang, Korea, North [NPWMD].

OFFICE         '... BUREAU 39; a.k.a. CENTRAL COMMITTEE BUREAU 39; a.k.a.
DIVISIO        ... OFFICE 39; a.k.a. OFFICE NO. 39; a.k.a. "THIRD FLOOR"),
Second         rment Building (Korean - Ch'o'ngsa), Chungso'ng, Urban Town
(Korean        , Chung Ward, Pyongyang, Korea, North; Chung-Guyok (Central
Distric        on Street, Kyongrim-Dong, Pyongyang, Korea, North; Changgwang
Street,        ng, Korea, North [DPRK].

OFFICE         ... BUREAU 39; a.k.a. CENTRAL COMMITTEE BUREAU 39; a.k.a. DIVISION
39; a.k        #39; a.k.a. OFFICE NO. 39; a.k.a. "THIRD FLOOR"), Second KWP
Governm        ing (Korean - Ch'o'ngsa), Chungso'ng, Urban Town (Korean -
Dong),         , Pyongyang, Korea, North; Chung-Guyok (Central District),
Sosong         ongrim-Dong, Pyongyang, Korea, North; Changgwang Street,
Pyongya        , North [DPRK].

OFFICE          k.a. BUREAU 39; a.k.a. CENTRAL COMMITTEE BUREAU 39; a.k.a.
DIVISI         . OFFICE #39; a.k.a. OFFICE 39; a.k.a. "THIRD FLOOR"), Second
KWP Gov        uilding (Korean - Ch'o'ngsa), Chungso'ng, Urban Town (Korean -
Dong),         , Pyongyang, Korea, North; Chung-Guyok (Central District),
Sosong         yongrim-Dong, Pyongyang, Korea, North; Changgwang Street,
Pyongya        , North [DPRK].

RECONN         NERAL BUREAU (a.k.a. CHONGCH'AL CH'ONGGUK; a.k.a. KPA UNIT 586;
a.k.a.         ngjesan-Guyok, Pyongyang, Korea, North; Nungrado, Pyongyang,
Korea,         K].

RI, Ch         k.a. RI, Je-Son), c/o General Bureau of Atomic Energy, Haeudong,
Pyongch        ct, Pyongyang, Korea, North; DOB 1938; nationality Korea, North
(indivi        MD].

RI, Ho          General Bureau of Atomic Energy, Haeudong, Pyongchen District,
Pyongya        North; DOB 1940; nationality Korea, North (individual)
[NPWMD

RI, Je         ... RI, Che-Son), c/o General Bureau of Atomic Energy, Haeudong,
Pyongch        ct, Pyongyang, Korea, North; DOB 1938; nationality Korea, North
(indivi        MD].

RYONHA         RY JOINT VENTURE CORPORATION (a.k.a. CHOSUN YUNHA MACHINERY JOINT
OPERATI        ny; a.k.a. KOREA RYENHA MACHINERY J/V CORPORATION; a.k.a. KOREA
RYONHA         RY JOINT VENTURE CORPORATION), Mangungdae-gu, Pyongyang, Korea,
North;         ne District, Pyongyang, Korea, North; Central District,
Pyongy         , North [NPWMD].

page 42 of 44

http://www.                       /downloads/ctrylst.txt

SAEINGE       PANY (a.k.a. CHO'NGSONG UNITED TRADING COMPANY; a.k.a. CHONGSONG
YONHAP;       CHO'NGSONG YO'NHAP; a.k.a. CHOSUN CHAWO'N KAEBAL T'UJA HOESA;
a.k.a.        THE ASSOCIATED CORPORATION; a.k.a. JINDALLAE; a.k.a. KU'MHAERYONG
COMPANY       NATURAL RESOURCES DEVELOPMENT AND INVESTMENT CORPORATION),
c/o Rec       General Bureau Headquarters, Hyongjesan-Guyok, Pyongyang,
Korea,        rado, Pyongyang, Korea, North [DPRK].

SANSRI        ND ACADEMY OF NATURAL SCIENCES; a.k.a. ACADEMY OF NATURAL
SCIENCE       CHAYON KWAHAK-WON; a.k.a. CHE 2 CHAYON KWAHAK-WON; a.k.a.
KUKPANG       a.k.a. NATIONAL DEFENSE ACADEMY; a.k.a. SECOND ACADEMY OF
NATURAL       a.k.a. SECOND ACADEMY OF NATURAL SCIENCES RESEARCH INSTITUTE),
Pyongya       North [NPWMD].

SECOND        NATURAL SCIENCES (a.k.a. 2ND ACADEMY OF NATURAL SCIENCES;
a.k.a.        NATURAL SCIENCES; a.k.a. CHAYON KWAHAK-WON; a.k.a. CHE 2
CHAYON        a.k.a. KUKPANG KWAHAK-WON; a.k.a. NATIONAL DEFENSE ACADEMY;
a.k.a.        a.k.a. SECOND ACADEMY OF NATURAL SCIENCES RESEARCH INSTITUTE),
Pyongya       North [NPWMD].

SECOND        NATURAL SCIENCES RESEARCH INSTITUTE (a.k.a. 2ND ACADEMY OF
NATURAL       a.k.a. ACADEMY OF NATURAL SCIENCES; a.k.a. CHAYON KWAHAK-WON;
a.k.a.        HAYON KWAHAK-WON; a.k.a. KUKPANG KWAHAK-WON; a.k.a. NATIONAL
DEFENSE       a.k.a. SANSRI; a.k.a. SECOND ACADEMY OF NATURAL SCIENCES),
Pyongya       North [NPWMD].

SECOND        COMMITTEE, Kangdong, Korea, North [NPWMD].

TAESONG       a.k.a. CHOSON TAESONG UNHAENG; a.k.a. KOREA DAESONG BANK), Segori-
dong, G       St., Potonggang District, Pyongyang, Korea, North; SWIFT/BIC
KDBK KP       850 2 381 8221; PHONE 850 2 18111 ext. 8221; FAX 850 2 381
4576; T       0 and 37041 KDP KP; TGMS daesongbank; EMAIL kdb@co.chesin.com
[DPRK].

TANCHON       L BANK (f.k.a. CHANGGWANG CREDIT BANK; f.k.a. KOREA CHANGGWANG
CREDIT        mil 1-Dong Pyongchon District, Pyongyang, Korea, North [NPWMD].

TONGBAN       a.k.a. BANK OF EAST LAND; a.k.a. DONGBANG BANK; a.k.a. TONGBANG
U'NHAEN       32, BEL Building, Jonseung-Dong, Moranbong District,
Pyongya       North; SWIFT/BIC BOEL KP PY [DPRK].

TONGBAN       (a.k.a. BANK OF EAST LAND; a.k.a. DONGBANG BANK; a.k.a.
TONGBAN       Box 32, BEL Building, Jonseung-Dong, Moranbong District,
Pyongya       North; SWIFT/BIC BOEL KP PY [DPRK].

TOSONG        TRADING CORPORATION, Pyongyang, Korea, North [NPWMD].

YUN, Ho       YUN, Ho-Jin), c/o Namchongang Trading Corporation,
Pyongya       North; DOB 13 Oct 1944; nationality Korea, North (individual)
[NPWMD].

http://www.t                   ownloads/ctrylst.txt

http://www.tr...ry ......wnloads/ctrylst.txt

YUN, Ho- In     ....a. YUN, Ho-Chin), c/o Namchongang Trading Corporation,
Pyongyan...      ..., North; DOB 13 Oct 1944; nationality Korea, North (individual)
[NPWMD].

"KIM, JI  S     ...a. KIM, CHIN-SO'K; a.k.a. KIM, TONG MYONG; a.k.a. KIM, TONG-
MYO'NG), :/.    ...en Commercial Bank, Saemul 1-Dong Pyonchon District,
Pyongyan...      ..., North; DOB 1964; nationality Korea, North (individual)
[NPWMD].

"KOMID"         ...NGGWANG SINYONG CORPORATION; a.k.a. EXTERNAL TECHNOLOGY
GENERAL         ...; a.k.a. KOREA KUMRYONG TRADING COMPANY; a.k.a. KOREA MINING
DEVELOPM...     ...: CORPORATION; a.k.a. NORTH KOREAN MINING DEVELOPMENT TRADING
CORPORAT...     ...al District, Pyongyang, Korea, North [NPWMD].

"RGB" (a ...     ...CH'AL CH'ONGGUK; a.k.a. KPA UNIT 586; a.k.a. RECONNAISSANCE
GENERAL         ...ongjesan+Guyok, Pyongyang, Korea, North; Nungrado, Pyongyang,
Korea, N...      ...

"THIRD F...     ...a. BUREAU 39; a.k.a. CENTRAL COMMITTEE BUREAU 39; a.k.a.
DIVISION...     ...OFFICE #39; a.k.a. OFFICE 39; a.k.a. OFFICE NO. 39), Second
KWP Gove...     ...ding (Korean – Ch'o'ngsa), Chungso'ng, Urban Town (Korean –
Dong), C...     ..., Pyongyang, Korea, North; Chung-Guyok (Central District),
Sosong S...     ...rim-Dong, Pyongyang, Korea, North; Changgwang Street,
Pyongyan...     ..., North [DPRK].

http://www.tr...      ...wnloads/ctrylst.txt

# Exhibit 4: "Guarantee of Payment"



Korea Kwangson [ICST; Kwangso'n] Banking Corp., Dandong Office, China

## Guarantee of Payment

To: Dandong Hongxiang Industrial Development Co., Ltd

ADD:11F No.A Jiadi Square No.66 Binjiang MID Road Dangdong City Liaoning Pro., China

TEL: 0086-0415-3459781          FAX: 0086-0415-3459783

Regarding the contract (Contract No: SPA NO. NCA-18112009-222, Price: 548.00USD/MT) between ▮ and ▮, signed on November 18, 2009 for 12,500MT of refined sugar, the Dandong Representative Office of Korea Kwangson Banking Corporation guarantees that it will pay 6,850,000.00 USD to Dandong Hongxiang Industrial Development Co., Ltd., the agent of the North Korean party. Dandong Hongxiang Industrial Development Co., Ltd. will pay ▮ bank within 120 days after establishing the irrevocable immediate payment letter of credit and within 90 days after the issuance of the B/L as indicated in the contract.

Dandong Representative Office of Korea Kwangson Banking Corporation

12/DD/2009

ADD: DEVELOPMENT ZONE HUIYOU BUILDING 1603, DANDONG, CHINA

MAIL:KBCDBANK@163.COM   TEL: 0086-0415-3127495          FAX: 0086-0415-3125363

The document is a draft of a contract between ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮ and a company in Shenyang (the Chinese party).

Regarding contract SPA NO. NCA-18112009-222, which was signed between ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮ in 2009, ▮▮▮▮▮▮▮▮▮▮▮ has decided to delegate the contract fulfilment duties to the Chinese party. The Chinese party and the Korean party agree to the following terms:

1. Product: Refined sugar
2. Specification: Edible sugar either from Brazil or from a place designated by the buyer.
3. Quantity: 12,500mt
4. Packaging: 50kg sacks
5. Delivery: CIF Songrim Port in the DPRK
6. Price: 471USD/MT CIF Songrim Port
7. Total amount: 5,887,500 USD
8. Quality inspection: SGS or equivalent
9. Payment:
   9-1.    As the Korean party's agent, the Chinese party will open an "Irrevocable Immediate Payment Letter of Credit" under its name at the bank designated by ▮▮▮▮▮▮▮▮▮. The quantity and the price must be as indicated in contract SPA NO. NCA-18112009-222. The Chinese party must send the BCL issued by the Chinese bank to ▮▮▮▮▮▮▮▮▮.
   9-2.    Within 60 days after the Chinese party's opening of the aforementioned Letter of Credit with the Canadian party, the Korean party will pay in cash the full contract amount and the commission to the Chinese party. (40% will be paid within ten days after delivery to Songrim port. The remaining 60% and the commission of 10% will be paid within 50 days after the 40% payment.)
10. Delivery: Within 50 days after the Chinese party notifies its opening of the Letter of Credit to the Korean party.
11. Other: Other terms are equal to those indicated in the contract between the Korean party and ▮▮▮▮▮▮▮▮.
12. Condition: The Chinese party will pay the full amount for the 12,500mt of refined sugar that the Korean party is purchasing from ▮▮▮▮▮▮▮▮▮. The Korean party will pay the Chinese party a commission of 10% of the full amount within 60 days.

[End of Translation]